In re the **MARRIAGE OF Gloria Bonita BOYER and Larry Charles Boyer.**

Upon the Petition of

**Gloria Bonita Boyer, Appellee,**

And Concerning

**Larry Charles Boyer, Appellant.**

No. 94–213.

Supreme Court of Iowa.

Sept. 20, 1995.

Leslie Babich of Babich, McConnell & Renzo, P.C., Des Moines, for appellant.

Thomas D. Hanson and Brenda K. O'Neil of Hanson, Bjork & Russell, Des Moines, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, NEUMAN, ANDREASEN, and TERNUS, JJ.

HARRIS, Justice.

We granted further review in this dissolution of marriage case in order to resolve a question on which the court of appeals is divided. Under federal legislation, social security benefits for the most part are beyond the reach of those seeking satisfaction of state court judgments, and state courts are generally without power to order otherwise. The question here is whether, in ordering the division of marital property, a court may consider the fact that one party can anticipate greater social security benefits upon retirement. We agree that a court cannot "divide" the anticipated benefits or establish any exact setoffs on such a basis. But we think a state court is not required to pretend to be oblivious of the fact that one party

expects benefits that will not be enjoyed by the other. This contrasting economic security can be weighed as a factor in fixing the economic terms of a dissolution decree. We vacate a contrary holding by the court of appeals. We modify and affirm the judgment of the district court.

Gloria and Larry Boyer were married on July 13, 1974. They had one child, Ryan, born March 24, 1976. Faced with an antinepotism rule at an insurance company where they were both employed, Gloria left her position there in 1976 so Larry could continue in a higher paying position. Larry continues to work there and also works part-time as a mortician. His current net monthly income is $3084.

After leaving the insurance company, Gloria was employed for a year before quitting to become a full-time homemaker. In 1993, after extensive training and preparation, she was working as a dental hygienist in two part-time positions with a net monthly income of $1719. She receives no additional benefits from either part-time position and has been unsuccessful in locating a full-time position. Gloria filed this petition for dissolution of marriage in March 1993.

The dispute concerns the valuation and division of the parties' assets. Gloria presented evidence without objection that the social security benefits Larry had accumulated during the marriage had a present value of $87,861.56, while Gloria's had a present value of $22,539.48. The parties agreed that Ryan would be placed in Gloria's primary care and that Larry would pay monthly child support of $622.35.

The district court awarded Gloria property it valued at $106,095 and assigned her $695 of the parties' debts. It awarded Larry property it valued at $67,682 and assigned him $13,000 of the debts. Gloria was awarded fifty percent of Larry's 401(k) and pension plans. She was also awarded alimony of $500 per month for ten years. In the matter of prime concern on further review, Gloria was ordered to pay Larry a cash settlement of $20,000. The court said that it was "to equalize the property distribution, and also recognizing and taking into consideration the

greater benefit Larry will be getting from social security."

On Larry's appeal and Gloria's cross-appeal, the court of appeals majority concluded that social security benefits could not be "considered" in property distributions. The court of appeals therefore increased the cash settlement Gloria was to pay Larry from $20,000 to $25,000. It also reduced the alimony award to $200 per month. Trial and appellate attorney fees were denied. Court of appeals dissenters believed that social security benefits could be *considered* in property distributions under Iowa Code section 598.21(1)(i) (1995) and prior case law.

I. Gloria does not argue she is entitled to a portion of Larry's social security benefits; she merely contends she is entitled to have them considered when the court divides the marital property. She relies on *In re Marriage of Schissel*, 292 N.W.2d 421, 424–27 (Iowa 1980) (state court may *consider* military pension benefits in formulating economic terms of dissolution decree notwithstanding federal legislation controlling those benefits). In *Schissel* we discussed *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 590–91, 99 S.Ct. 802, 812–13, 59 L.Ed.2d 1, 16 (1972) (in fixing alimony state court cannot consider benefits preempted under federal railroad retirement act). The court of appeals relied heavily on *Hisquierdo*, especially in view of its holding that, not only were the benefits beyond the reach of an alimony decree, but consideration of those benefits by way of setoff was also prohibited. The court reasoned that to allow a setoff by way of adjusting property division would allow state courts to do indirectly what the preemption provisions prohibited them from doing directly.

*Hisquierdo* of course involved the railroad retirement act, not the social security act at issue here, but the two acts have striking similarities. In common with the railroad retirement act, the social security act provides that "[t]he right to alter, amend, or repeal any provision of this [act] is hereby reserved to the Congress." 42 U.S.C.A. § 1304 (West 1991).

The act specifically prohibits the assignment of benefits:

The right of any person to any future payment under this subchapter shall not be transferrable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

42 U.S.C.A. § 407(a) (West 1991).

In *Hisquierdo,* 439 U.S. at 587, 99 S.Ct. at 811, 59 L.Ed.2d at 14, the court found the phrase "legal process under any circumstances whatsoever" in the railroad retirement act referred to community property claims in dissolution actions.

The social security act provides an exception to the anti-assignment clause for the collection of child support and alimony that is past due:

> Notwithstanding any other provision of law ... moneys (the entitlement to which is based upon remuneration for employment) due ... to any individual ... shall be subject ... to legal process brought for the enforcement, against such individual of his legal obligations to provide child support or make alimony payments.

42 U.S.C.A. § 659(a) (West 1991).

The act draws a distinction between alimony and property transfers which result from equitable distribution when it defines alimony as:

> Not includ[ing] any payment or transfer of property or its value by an individual to his spouse or former spouse in compliance with any community property settlement, equitable distribution of property, or other division of property between spouses or former spouses.

42 U.S.C.A. § 662(c) (West 1991).

It is also significant that the act provides a specific avenue for divorced persons to obtain social security benefits. A divorced spouse of an individual entitled to social security retirement or disability benefits qualifies for spousal benefits if he or she: (1) applies for such benefits; (2) is at least sixty-two years old; (3) is not entitled to his or her own primary benefit in an amount equal to or greater than one-half due his or her spouse;

and (4) is not married. 42 U.S.C.A. §§ 402(b)(1)(A)–(D), 402(c)(1)(A)–(D) (West 1991).

It is apparent that *Hisquierdo* bars state courts from adjusting the parties' disproportionate social security benefit expectations when formulating economic terms of dissolution decrees. The preemptive language of the railroad act (45 U.S.C.A. § 231m) involved in *Hisquierdo* is sufficiently similar to that in the social security act involved here to render the *Hisquierdo* holding binding here. Indeed the *Hisquierdo* court itself analogized the railroad retirement act to the social security act. *Hisquierdo,* 439 U.S. at 574–75, 99 S.Ct. at 804–05, 59 L.Ed.2d at 6–7. The *Hisquierdo* barrier seems even more formidable when viewed in the light of congressional response to that holding. Following *Hisquierdo,* congress amended the anti-assignment clause of the railroad retirement act to permit distribution of "tier II" benefits in dissolution decisions. Act of Aug. 12, 1983, Pub.L. 98–76, Title IV, § 419(a)(3), 97 Stat. 438 (codified as amended at 45 U.S.C.A. § 231m(b)(2) (West 1986)). In the same year congress also amended the anti-assignment provision of the social security act. In contrast this amendment stated:

> No other provision of law, enacted before, on, or after April 20, 1983, may be construed to limit, supersede, or otherwise modify the provisions of this section except to the extent that it does so by express reference to this section.

Act of Apr. 20, 1983, Pub.L. 98–21, Title III, § 335(a), 97 Stat. 130 (codified as amended at 42 U.S.C.A. § 407(b) (West 1991)). Knowing that in *Hisquierdo* the court considered the railroad retirement act and the social security act to be analogous, it seems that congress may well have intended to overrule *Hisquierdo* with regard to the railroad retirement act, but codify *Hisquierdo* with regard to the social security act.

■ So we agree with the court of appeals majority in its holding that state courts are without power to directly or (by way of set-off) indirectly divide social security benefits in their formulation of economic terms and dissolution decrees. *See* 24 Am.Jur.2d *Di-*

*vorce and Separation* § 910 (1983). We disagree with the court of appeals majority only in its finding that the trial court violated this rule.`

 II. We see a crucial distinction between: (1) adjusting property division so as to indirectly allow invasion of benefits; and (2) making a general adjustment in dividing marital property on the basis that one party, far more than the other, can reasonably expect to enjoy a secure retirement. It should not invalidate a property division if a disproportionate expectation regarding social security benefits is acknowledged in the court's assessment of the equities.

We emphasize that the adjustment here was not proportional because no attempt was made to shape the extent of the adjustment by computing the disproportion. Although perhaps not controlling, we note that the disproportion in social security benefits was not the only factor for the adjustment; the court was first prompted by its desire "to equalize the property distribution." It would indeed be ironic to bar Gloria from having the disproportion in the anticipated benefits weighed as a general factor in her favor. The disproportion was in part a result of her willingness to leave her position because of the insurance company's antinepotism rule.

We do not think the federal preemption legislation requires state courts under these circumstances to purge so obvious an economic reality in its assessment. We thus hold the challenged consideration did not poison the trial court's property division. On our de novo review we agree with and affirm the trial court determination regarding property division.

III. We agree with the court of appeals unanimous holding that modified the alimony award, reducing it to $200 per month. We also agree with that court's holding regarding the award of attorney fees in district court, but hold Larry should be, and he is, ordered to pay $1750 toward Gloria's attorney fees on appeal.

We have considered, but choose not to discuss, other assignments. In all other respects the judgment of the trial court is affirmed. Tax costs equally to the parties.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT MODIFIED AND AFFIRMED.**