# CIRCUIT COURT OF FAIRFAX COUNTY

Florence J. Holland

   v.

Leon E. Holland

March 3, 1999

Case No. (Chancery) 148131

BY JUDGE STANLEY P. KLEIN

This matter is before the Court on the limited issue of whether non-prospective social security disability payments are properly subject to consideration by a court in making an equitable distribution award. Pursuant to the Court's earlier partial ruling on equitable distribution, all other property issues have been adjudicated. Complainant Florence J. Holland ("Wife") contends that funds presently and previously on deposit in an account at Wachovia Bank ("the Wachovia Account") now titled solely in Husband's name, are marital property and therefore can be considered in determining a monetary award under Virginia Code § 20-107.3 (Virginia's equitable distribution statute). Defendant Leon E. Holland ("Husband") argues that Virginia's equitable distribution statute, in the context of the issue presented in this case, is preempted by § 407(a) of the federal Social Security Act, 42 U.S.C. § 301 *et seq.*, and that such preemption guarantees these funds as his separate property. For the reasons set forth in this opinion, the Court finds that § 407(a) does not preempt Virginia Code § 20-107.3 in this case. Therefore, the funds are marital property subject to consideration by the Court in making a monetary award pursuant to Virginia's equitable distribution statute.

## I. *Introduction*

The parties agree that the funds in the Wachovia Account derive solely from social security disability payments received by Husband from the federal government during the marriage that were not commingled with other funds. Husband's monthly federal social security disability income has been approximately $1163.00. Prior to December 31, 1996, the benefit payments were deposited in a bank account titled solely in Husband's name and were then transferred to a joint bank account titled in the names of the parties at Wachovia Bank (formerly, Central Fidelity Bank). On December 31, 1996, Husband withdrew $21,993.00 from this account and deposited this amount in a separate account titled in his name only at Wachovia Bank. See, Complainant's Exhibit 13. The parties separated on February 12, 1997. On that date, the balance of the funds in the Wachovia account was $24,608.21. Interest of $58.90 was credited to the account on February 25, 1997. No other activity took place in the account prior to the injunction. See, *id*. Wife filed a Bill of Complaint for Divorce on February 14, 1997. On March 13, 1997, this Court entered an order, ("the Order"), awarding Wife spousal support *pendente lite*. The Order also imposed the following injunction:

> Neither party shall sell, use, or transfer marital assets, liquid or otherwise, without the written consent of the other, agreement of counsel, or order of this court.

The parties agree that no consent was given to deviate from these terms of the Order. As of the date of the equitable distribution hearing before this Court, the balance in the Wachovia account was $2177.77. The parties agree that the funds expended from the Wachovia Account after the date of separation were used solely to meet Husband's *pendente lite* spousal support obligations established by the Order.

Wife contends that Husband's use of these funds to satisfy his spousal support obligation is inconsistent with the Court's injunction barring the dissipation of marital assets and asks the Court to equitably distribute $24,667.11, the full balance of the Wachovia Account prior to the injunction.[1] Husband responds that the funds were his separate property by virtue of

---

[1] The parties have stipulated that virtually all of the marital property is to be distributed by the Court in equal shares, including any portion of the Wachovia Account which the Court finds to be marital property. This 50/50 stipulation agreement did not extend to certain vacation property, which the Court considered separately.

federal preemption and, thus, his use of these funds to satisfy the *pendente lite* spousal award in no way offended the injunction set forth in the Order. Husband further argues that, even if the Court were to deem the funds a marital asset, the Court could not reconstitute the account because the expenditures made for spousal support do not constitute "waste" under Virginia law. Wife replies that, in this context, § 407(a) of the federal Social Security Act does not preempt Virginia's equitable distribution statute. Alternatively, Wife asserts that if the federal Social Security Act does preempt Virginia's equitable distribution statute, the funds, which were received during the course of the marriage, were transmuted to marital property when they were placed in a joint bank account. Finally, Wife argues that the expenditures of these marital funds in contravention of the *pendente lite* injunction empowers this Court to reconstitute the entire account.

## II. *Transmutation of Property*

Virginia Code § 20-107.3(A)(3)(f) addresses the transmutation of property and states:

> When separate property is retitled in the joint names of the parties, the retitled property shall be deemed to be transmuted to marital property. However, to the extent that the property is retraceable by a preponderance of the evidence and was not a gift, the contributed property shall retain its original classification.

Both parties agree that the funds in the Wachovia Account were not commingled with other funds and are therefore easily traceable. Therefore, the Court must determine whether the evidence supports Wife's contention that the funds, even if originally Husband's separate property, were transmuted to marital property by virtue of a gift from Husband to Wife. Wife asserts that the funds were acquired during the course of the marriage and eventually placed in a joint bank account with the mutual understanding that the funds were to be used for family emergencies.[2] One who claims ownership of property by gift must demonstrate by clear and convincing evidence the elements of donative intent and actual or constructive delivery. See, e.g., *Rahbaran v. Rahbaran*, 26 Va. App. 195, 210, 494 S.E.2d 135 (1997). While the Court

---

[2] Wife has conceded that the statute places on her the burden to demonstrate the funds were a gift. In view of this concession, the Court need not decide where that burden properly lies.

must consider joint title in determining whether a gift was made, joint title, alone, is insufficient to prove a gift. See, *Rowe v. Rowe*, 24 Va. App. 123, 137, 480 S.E.2d 760 (1997). The putative donee of an *inter vivos* gift bears the burden of establishing: (1) the present intent on the part of the donor to make a gift; (2) delivery or transfer of the gift; and (3) acceptance of the gift by the donee. See, *id.* (citing *Theismann v. Theismann*, 22 Va. App. 557, 566, 471 S.E.2d 809, aff'd en banc, 23 Va. App. 697, 479 S.E.2d 534 (1996)); *Dean v. Dean*, 8 Va. App. 143, 146, 379 S.E.2d 742 (1989).

Mrs. Holland has failed to meet her burden to establish that the funds placed in the Wachovia Account were the proceeds from a marital gift. At the Commissioner's hearing, both Wife and her witness testified that throughout this forty-two year marriage, Mr. Holland had cautiously guarded and controlled what he considered to be "his money." Indeed, the overwhelming evidence, as presented through Wife's own testimony, shows that during the entirety of the marriage, and as late as February 1996, Husband routinely insisted that his Wife "reimburse" him for expenditures that she made for such mundane household items as bread and detergent. See, Transcript of Commissioner's Hearing, at 42-46 (November 11, 1998). Wife's witness, the parties' daughter, testified that during the course of the marriage her mother had repeatedly sought financial assistance from extended family members in order to purchase household necessities. She punctuated this testimony by stating that as a general rule, "you didn't use [Mr. Holland's] money. You just didn't touch his money, you just didn't." Transcript of Commissioner's Hearing, at 204-05. As Mr. Holland testified, the funds were placed in the joint account for use in the event of a future emergency. As such, the Court finds that the evidence was insufficient to establish that Mr. Holland had the present intention to make a gift to his wife when he placed the funds in the joint Wachovia Account. Consequently, in order to determine whether these funds are subject to a monetary award under Virginia's equitable distribution statute, the Court must determine whether the funds in question were Husband's separate property in light of § 407(a) of the federal Social Security Act.

### III. *Federal Preemption*

#### A. *General Principles*

All property acquired by a spouse during the marriage is presumed to be marital property in the absence of satisfactory evidence that it is separate property. *Stroop v. Stroop*, 10 Va. App. 611, 615, 394 S.E.2d 861 (1990). The

party asserting that the property is separate has the burden to present sufficient evidence to rebut this presumption. *Rexrode v. Rexrode*, 1 Va. App. 385, 392, 339 S.E.2d 544 (1986). Mr. Holland contends that § 407(a) of the federal Social Security Act guarantees that income derived from social security disability payments is separate property which cannot be reached by any legal process, including equitable distribution. Section 407(a) of the Social Security Act sets forth an anti-alienation provision which states, in relevant part, that "none of the monies paid or payable or rights existing under this sub-chapter shall be subject to execution, levy, attachment, garnishment, or other legal process . . . ." 42 U.S.C. § 407(a) (emphasis added). Husband contends that the language of § 407(a) clearly preempts state laws that allow courts to directly or indirectly reach social security benefits, thereby precluding the Court's consideration of such benefits in determining a monetary award under Virginia's equitable distribution statute.

Article VI, Clause 2, of the United States Constitution makes federal law supreme over state law. However, the existence of federal legislation does not, alone, exempt its relevant subject matter from state control. See, *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 583, 59 L. Ed. 2d 1, 99 S. Ct. 802 (1979). As the United States Supreme Court has explained, "the pertinent questions are whether the right asserted [under state law] conflicts with the express terms of federal law and whether its consequences sufficiently injure the objectives of the federal program to require nonrecognition." *Hisquierdo*, 439 U.S. at 583 (emphasis added). Before a state law governing domestic relations will be preempted, it must do major damage to clear and substantial federal interests. See, *Rose v. Rose*, 481 U.S. 619, 625, 95 L. Ed. 2d 599, 107 S. Ct. 2029 (1987) (quoting *Hisquierdo*, 439 U.S. at 581). Domestic relations as a subject matter of legislation belongs to the laws of the states and not to the laws of the federal government. See, *Hisquierdo*, 439 U.S. at 581 (citing *In re Burrus*, 136 U.S. 586, 593-94, 34 L. Ed. 500, 10 S. Ct. 850 (1890)). Review of state domestic relations law under the Supremacy Clause is limited to a determination of whether Congress has "positively required by direct enactment" that state law be preempted. See, *Hisquierdo* at 581 (quoting *Wetmore v. Markoe*, 196 U.S. 68, 77, 49 L. Ed. 390, 25 S. Ct. 172 (1904)).

B. *Common Law Precedent Interpreting Section 407(a)*

Husband relies on a number of cases interpreting § 407(a) for the proposition that the funds in the Wachovia Account cannot be considered by the Court in making a monetary award under Virginia's equitable distribution statute. See, e.g., *Flemming v. Nestor*, 363 U.S. 603, 4 L. Ed. 2d 1435, 80 S.

Ct. 1367 (1960) (ruling that prospective social security benefits are not accrued property right and are therefore exempt from division); *Olson v. Olson*, 445 N.W.2d 1 (N.D. 1989) (upholding trial court's decision to exempt wife's future social security benefits from distribution or off-set award under state equitable distribution statute); *Evans v. Evans*, 98 Mich. App. 328, 296 N.W.2d 248 (Mich. 1980) (holding prospective social security benefits are not marital property as they constitute unascertainable contingent future interest); *Minor v. Minor*, Case No. C122515 (Fairfax County 1993) (finding prospective social security benefits not subject to equitable distribution). These cases, dealing with the direct division or distribution of prospective benefits, are inapposite to the present case. Indeed, the issue before this Court, whether social security benefits paid during the course of a marriage and deposited into a bank account titled in the sole name of the recipient are subject to equitable distribution, appears to be a matter of first impression in Virginia.

Other appellate courts that have addressed whether social security benefits could be considered in disposing of marital property in view of § 407(a) have answered in the affirmative. The Supreme Court of Iowa in *In re Marriage of Boyer*, 538 N.W.2d 293 (Iowa 1995), addressed this issue in the context of considering prospective benefits in dividing marital property and ruled that § 407(a) does not preclude such consideration. In so ruling, the court acknowledged that § 407(a) preempts state laws allowing direct division of social benefits as well as any direct set-off in consideration of such benefits. However, the court concluded that consideration of the existence of these benefits is not foreclosed by § 407(a) and declared:

> we think a state court is not required to pretend to be oblivious of the fact that one party expects benefits that will not be enjoyed by the other. This contrasting economic security can be weighed as a factor in fixing the economic terms of a dissolution decree.

*In re Marriage of Boyer*, 538 N.W.2d at 293-94. Maine's highest court reached the same conclusion in *Pongonis v. Pongonis*, 606 A.2d 1055 (Me. 1992), where it upheld the trial court's consideration of a wife's prospective social security income in dividing marital assets. The appellate court's decision in *Pongonis* turned on the fact that, notwithstanding § 407(a)'s prohibition against assignment and transfer of benefits, the trial court made no attempt to directly divide or distribute social security benefits, but instead considered them as "a relevant factor" in dividing marital property. See, *Pongonis*, 606 A.2d at 1058. A decision of the Court of Special Appeals of

Maryland also supports the proposition that while social security benefits are not subject to direct distribution in a divorce proceeding under Maryland's equitable distribution statute, "it may be that a court could consider the fact that a party is receiving or will receive benefits, as 'any other factor' in determining whether to make a monetary award." *Pleasant v. Pleasant*, 97 Md. App. 711; 632 A.2d 202, 207, n. 3 (Md. Ct. Spec. App. 1993).

Finally, our own Court of Appeals has indicated that § 407(a) does not necessarily preempt a court's consideration of benefits as a factor in making a monetary award under Virginia's equitable distribution statute. In *Brinkley v. Brinkley*, 5 Va. App. 132, 361 S.E.2d 139 (1987), the Virginia Court of Appeals was asked to decide, *inter alia*, whether the trial court erred in awarding a wife an interest in her husband's disability income. Finding an insufficient factual basis in the record for deciding the issue, the Court remanded, but cautioned:

> the statutory scheme of Code § 20-107.3 requires that an equitable division, if any, of the marital property be made by means of a monetary award. Code § 20-107.3(B) requires the court to determine the parties' interests and rights in marital property for the purpose of making an award and specifically states that "such interests and rights shall not attach to the legal title of such property." Thus, several of the cases which hold that a decree awarding to the wife a percentage of the pensions themselves is an actual division of federal disability benefits due to the husband and is violative of federal policy may be distinguishable.

*Brinkley*, 5 Va. App. at 141.

## C. *Statutory Interpretation*

Husband further contends that the United States Supreme Court's ruling in *Philpott v. Essex County Welfare Bd.*, 409 U.S. 413, 34 L. Ed. 2d 608, 93 S. Ct. 590 (1973), definitively resolves the preemption issue in his favor. Defendant's reliance on *Philpott* is misplaced. In Philpott, the Court considered whether a New Jersey statute requiring state welfare benefit recipients to reimburse the state for benefits received was enforceable by the state court in that case. Wilkes, the petitioner, had applied for and received state welfare benefits. Subsequently, he also applied for and received federal social security disability benefits. Wilkes received a lump sum benefit payment from the federal government representing a retroactive award of

social security benefits. Wilkes deposited this lump sum benefit payment in his bank account. The State of New Jersey then sued to reach those funds. New Jersey reasoned that it had overpaid Wilkes during the time period covered by the retroactive federal benefit payment. Essentially, the State argued that Wilkes had qualified for and received a higher level of state benefits because the level of state benefits had been determined at a time when Petitioner, in actuality, qualified for, but was not receiving federal benefits. Finding that § 407(a) preempted, the Court declared that the funds on deposit were "moneys paid" under § 407(a) and that "the suit was an attempt to subject the money to 'levy, attachment . . . or other legal process'." *Philpott*, 409 U.S. at 415-16. The Court rejected the State's argument that § 407(a) operates solely to insulate benefit payments from the claims of creditors and declared that "it imposes a broad bar against the use of any legal process to reach all social security benefits." *Id.* at 417 (emphasis added).

In *Hisquierdo*, the United States Supreme Court made clear that preemption occurs only where a state law expressly conflicts with federal law and does major damage to a substantial federal interest. *Hisquierdo*, 439 U.S. at 583. Virginia has long adhered to the principle that the main purpose of statutory construction is to determine the intent of the legislature. See, e.g., *Cousar v. Peoples Drug Store*, 26 Va. App. 740, 744, 496 S.E.2d 670 (1998) (citations omitted). In analyzing a statute, courts must presume that the legislature chose carefully the words it used in enacting the statute and are bound by those words in interpreting the statute. See, *id.* at 745 (citations omitted). Courts may not add language to a statute which the legislature chose not to include. See, *County of Amherst Bd. of Supervisors v. Brockman*, 224 Va. 391, 397, 297 S.E.2d 805 (1992).

In *Mansell v. Mansell*, 490 U.S. 581, 104 L. Ed. 2d 675, 109 S. Ct. 2023 (1989), the United States Supreme Court applied the foregoing principles of statutory interpretation and concluded that 10 U.S.C. § 1408 preempted state domestic relations laws in the context of dividing or distributing any portion of military retirement pay which had been waived by the service member in order for the retiree to receive veterans' disability benefits. While that Act allowed state courts to distribute "disposable retired or retainer pay," the Act included a definitions section which expressly excluded the waived income from "disposable retired or retainer pay." The Supreme Court thus concluded that the Act's "plain and precise" language established federal preemption of state authority to subject this income to division or distribution by state courts. See, *Mansell*, 490 U.S. at 589.

Mr. Holland contends that the term "other legal process" is broad enough to encompass a monetary award pursuant to an equitable distribution statute.

The Court does not agree. In 1975, Congress amended the Social Security Act to allow federal benefits received under the Act to be subject to legal process for the enforcement of child support and alimony obligations. See, 42 U.S.C. § 659. In 1977, Congress added a definitions section to this new provision which defined, *inter alia*, "alimony" and "legal process." Husband correctly notes that, as defined in § 659, "alimony," as an enforceable obligation subject to legal process, does not include payments or transfers of property or their value in compliance with an equitable distribution award. See, 42 U.S.C. § 659(I)(3)(B)(2). However, "legal process," also defined therein, plainly does not include a monetary award pursuant to Virginia Code § 20-107.3. "Legal process" is defined by Congress as:

> any writ, order, summons, or other similar process *in the nature of garnishment* which is issued by a court or an administrative agency of competent jurisdiction in any State, territory or possession of the United States . . . .

42 U.S.C. § 659(I)(3)(B)(5) (emphasis added).

Virginia Code § 20-107.3 does not subject moneys paid under the Act to "legal process." Indeed, our equitable distribution scheme is not "in the nature of garnishment." Virginia law specifically prohibits courts from directly ordering the division or transfer of assets, such as the Wachovia Account, which are titled solely in one party's name. See, Va. Code § 20-107.3(C). Complainant does not seek, and the Court does not intend to order, direct disbursement of the funds in the Wachovia Account, thereby subjecting them to "legal process" as defined in the Act. The sole issue before this Court is whether it may consider these funds in determining a monetary award pursuant to Virginia Code § 20-107.3. When amending the federal Social Security Act in 1977 to include a definitions section, Congress, by direct enactment, could well have decided to include equitable distribution awards within the meaning of "legal process" as it had expressly declined to do in the definition of "alimony." Its decision not to do so is a clear indication that Congress did not intend to entirely foreclose social security benefits from consideration by state courts acting pursuant to duly enacted state domestic relations laws. As such, Virginia's equitable distribution statute does not expressly conflict with federal law.

Nor does Virginia's equitable distribution statute do major damage to the federal government's substantial interest in safeguarding the elderly and disabled from the hardships of poverty. In *Helvering v. Davis*, 301 U.S. 619, 641, 81 L. Ed. 1307, 57 S. Ct. 904 (1937), the United States Supreme Court

reviewed the constitutionality of the then newly enacted federal Social Security Act. In finding the Act constitutional, the Court examined its underlying congressional intent and found it to be aimed at "saving men and women from the rigors of the poor house as well as from the haunting fear that such a lot awaits them when the journey's end is near." *Id.* In addition to the direct distribution of jointly owned marital property, Subsection D of Virginia's equitable distribution statute allows trial courts to make a monetary award based on the rights and equities of the parties in the marital assets. Subsection E provides guidance to the court in making such an award and allows courts to consider, *inter alia*, "such other factors as the court deems necessary or appropriate to consider in order to arrive at a *fair* and *equitable* monetary award." Va. Code § 20-107.3(E) (emphasis added). This Court's ruling today in no way subjects Mr. Holland to financial insecurity or uncertainty.[3] Indeed, the Court's earlier equitable distribution of the parties' other assets encompassed an equal distribution of funds and property worth hundreds of thousands of dollars. Moreover, Mr. Holland, in fact, never used any of the funds at issue to support his needs. These funds were utilized by Mr. Holland solely to satisfy a *pendente lite* support award which necessarily would have been based on his then existing income, not his previously deposited assets.

## D. *Virginia Public Policy Supports Consideration of Benefits*

The Virginia statutory scheme governing a court's determination of familial support obligations supports consideration of these benefits in determining an appropriate monetary award. Virginia Code § 20-108.2(C) specifically directs courts to consider social security disability benefits as gross income for purposes of a court's determination of child support. See, *Whitaker v. Colbert*, 18 Va. App. 202, 205, 442 S.E.2d 429 (1994); cf., *Bennett v. Commonwealth*, 22 Va. App. 684, 694, 472 S.E.2d 668 (1996) (reiterating ruling in *Whitaker* but explaining that social security benefits received by children are not includable in gross income).

Virginia Code § 20-107.1 has also been interpreted to allow consideration of various types of disability benefits, which are otherwise exempt from distribution, in determining spousal support. In *Holmes v. Holmes*, 7 Va. App.

---

[3] Nor would consideration of these funds in an equitable distribution case where the parties were less affluent necessarily offend § 407(a). Virginia trial courts are bound under Virginia's equitable distribution statute to equitably distribute assets on a case by case basis.

472, 484-85, 375 S.E.2d 387 (1988), the Virginia Court of Appeals affirmed the trial court's decision ordering spousal support in an amount which exceeded the husband's monthly non-disability income. The husband argued that, under the United States Supreme Court's ruling in *Mansell,* the award was improper as it necessitated using a portion of military disability income, which was exempt from distribution under federal law, to satisfy the monthly support obligation. The Court of Appeals disagreed, reasoning that the payments need not originate from the exempt income and noting that "the husband's military disability benefits could properly be considered in determining the amount of spousal support awarded to the wife." *Holmes,* 7 Va. App. at 485. The *Holmes* decision was cited approvingly in *Owen v. Owen,* 14 Va. App. 623, 419 S.E.2d 267 (1992), where the Court of Appeals again concluded that military disability benefits, while exempt from direct distribution under Virginia's equitable distribution statute, may nonetheless be considered by the trial court in awarding spousal support. See, *Owen,* 14 Va. App. at 627.

Consistent with its rulings in *Whitaker, Holmes,* and *Owen,* the Virginia Court of Appeals has also upheld a trial court's consideration of federally exempt veterans' benefits in making spousal and child support awards. See, *Lambert v. Lambert,* 10 Va. App. 623, 627, 395 S.E.2d 207 (1990).

### E. *Funds in Wachovia Account are Marital Property*

The requirements for federal preemption in the domestic relations context, as set forth by the United States Supreme Court in *Hisquierdo,* have not been met. Virginia's equitable distribution statute neither expressly conflicts with § 407(a), nor does major damage to the federal government's interest in safeguarding the economic security of the elderly and disabled. Moreover, relevant case law and public policy support the consideration of these benefits by trial courts in determining an appropriate monetary award. Accordingly, this Court holds that Virginia's equitable distribution statute is not preempted by § 407(a) of the Social Security Act and the funds on deposit in the Wachovia Account at the time of the separation of the parties were therefore marital property.

### IV. *Waste*

Husband asserts that if the Court were to find the Wachovia Account to be marital property, the maximum sum that the Court could consider for purposes of any monetary award would be $2,177.77, the present balance in

the account, as the husband's post-separation expenditures from the Wachovia Account do not qualify as waste under Virginia law. Wife responds that the Court should consider the total sum in the account at the time of separation because husband's post-separation expenditures were in violation of a *pendente lite* injunction and the account is therefore subject to reconstitution in its entirety. The resolution of this issue requires an analysis of the evolution of Virginia's jurisprudence on "waste."

Any analysis of waste in Virginia must necessarily begin with the Court of Appeals seminal decision in *Booth v. Booth*, 7 Va. App. 22, 371 S.E.2d 569 (1988). In Booth, the Court of Appeals addressed the expenditure of $146,000 of funds expended by the wife for: (1) a speculative stock market venture; (2) legal fees; and (3) support of herself and her son. The Court of Appeals recognized that a trial court could consider not only the positive contributions made by the parties but also "negative contributions in the form of squandering and destroying marital resources." *Id.* at 27 (citation omitted). Although noting that its definition was not intended to be exclusive, the Court of Appeals defined waste as "the dissipation of marital funds in anticipation of divorce or separation for a purpose unrelated to the marriage and in derogation of the marital relationship at a time when the marriage was in jeopardy." *Booth*, 7 Va. App. at 27 (citations omitted). In framing the competing interests in waste analysis, the Court of Appeals declared:

> the goal of equitable distribution is to adjust the property interests of the spouses fairly and equitably. The mechanism to accomplish that goal is the monetary award. To allow one spouse to squander marital property is to make an equitable award impossible. On the other hand, at least until the parties contemplate divorce, each is free to spend marital funds. To decide a question of dissipation of marital asserts, we must accommodate these conflicting interests in the marital estate.

*Booth*, 7 Va. App. at 27-28 (citations omitted). The Court of Appeals then remanded the case to the trial court in order for it to consider, *inter alia*, the issue of waste.

The Booth decision was followed two years later by the Court of Appeals decision in *Clements v. Clements*, 10 Va. App. 580, 397 S.E.2d 257 (1990). In *Clements*, the Court of Appeals delineated the burden of proof in a case where waste is claimed. "Once the aggrieved spouse shows that marital funds were either withdrawn or used after the breakdown, the burden rests with the party charged with dissipation to prove that the money was spent for a proper purpose." *Id.* at 586. In determining whether the funds were spent "for a

proper purpose," the *Clements* court accepted the majority view and held that "the use of funds for living expenses while the parties are separated does not constitute dissipation." *Id.* at 587. The trial court had accepted husband's explanation of his use of the majority of the funds to defray household expenses and the cost of his son's college tuition. The Court of Appeals affirmed the trial court's finding that these funds were used for a proper purpose but reversed the trial court's failure to consider other expenditures that were not explained by Mr. Clements.

Since its decision in *Booth* and *Clements*, the Court of Appeals has affirmed trial courts which held similar expenditures of marital property to be proper. See *Amburn v. Amburn*, 13 Va. App. 661, 666, 414 S.E.2d 847 (1992) (daughter's education, wife's living expenses, attorney's fees for divorce proceedings, and required loan payments); *Alphin v. Alphin*, 15 Va. App. 395, 402, 424 S.E.2d 572 (1992) (marital debts and expenses including medical bills for the wife and voluntary support in a sum in excess of the husband's take home pay the previous year); *Decker v. Decker*, 17 Va. App. 12, 19, 435 S.E.2d 407 (1993) (living expenses, litigation expenses, and costs); *L.C.S. v. S.A.S.*, 19 Va. App. 709, 721, 453 S.E.2d 580 (1995) (fees for husband's criminal defense). But see, *Theismann v. Theismann*, 22 Va. App. 557, 572, 471 S.E.2d 809, aff'd en banc, 23 Va. App. 697, 479 S.E.2d 534 (1996) (finding alimony payments to prior wife constitute "dissipation"); *Luczkovich v. Luczkovich*, 26 Va. App. 702, 714, 496 S.E.2d 157 (1998) (affirming trial court determination that husband did not satisfy burden of proof to show propriety of expenditures through line of credit); *Barker v. Barker*, 27 Va. App. 519, 536, 500 S.E.2d 240 (1998) (payment of separate debt with marital funds considered as a negative contribution for purposes of equitable distribution).

Mr. Holland contends that his payment of court ordered *pendente lite* support to Mrs. Holland helped defray the parties post-separation living expenses and consistent with the decisions in *Clement, Amburn, Alphin* and *Decker* cannot constitute waste. The Court disagrees. In each of those cases, the Court of Appeals affirmed determinations by a trial court, after a trial judge's consideration of all the evidence, that waste had not occurred. Moreover, in its recent decision in *Luczkovich v. Luczkovich*, the Court of Appeals limited its decision in *Clement* by stating: "As a general rule, 'the use of [marital] funds for living expenses while the parties are separated does not constitute dissipation'." *Luczkovich* at 714 (emphasis added) (citations omitted).

This Court believes that the limitation in *Luczkovich* is well advised. The clear intent of the General Assembly in its enactment of, and amendments to,

Va. Code § 20-107.3 is to afford trial courts the opportunity to consider the evidence presented and, within the framework set out in § 20-107.3, equitably distribute the marital property of the parties. Virginia's waste jurisprudence preceding *Luczkovich* and *Barker* required the finest and most ethical domestic relations attorneys to advise all of their clients to utilize marital property for all of their post-separation expenditures, while establishing new bank accounts into which they would deposit all of their post-separation earnings. As these non-commingled post-separation earnings would be separate property, they could not be reached or considered in any equitable distribution award. Indeed, an unqualified right to utilize marital funds for post-separation living expenses would allow an employed husband, who had access to the parties' sole marital bank account containing $50,000, to spend all of those funds on his own attorney's fees and living expenses while building up his own separate $50,000 account, which would not be subject to equitable distribution. He would therefore leave his unemployed wife without any marital property to be equitably distributed and without any means of paying her attorney's fees. Such a result would be utterly inconsistent with the goals of the General Assembly in its enactment of Va. Code § 20-107.3.

The General Assembly seemingly foresaw the possibility of such tactics when it empowered trial courts to prevent such abuses by issuing injunctions which forbid dissipation of the marital assets pursuant to Va. Code § 20-103, such as the *pendente lite* injunction herein. Resort to the injunctive power of the court, *pendente lite*, represents the sole means of preventing a party from spending marital funds for his or her sole benefit and assuring that these funds are in fact available for final equitable distribution consistent with the intent of the General Assembly. This Court declines Mr. Holland's invitation to strip § 20-103 of its intended purpose by ruling that his expenditure of marital assets to meet his court ordered *pendente lite* spousal support obligation cannot constitute a basis for reconstituting the Wachovia Account in full.

At the time of the *pendente lite* hearing in March 1997, Husband was receiving $2,764.00 per month in combined income from his A. T. & T. pension and his Social Security benefits. Wife's monthly income at the time was $1,104.00 according to Husband, and $668.77 according to Wife. See, Complainant's *Pendente Lite* Exhibits 1-3; Defendant's *Pendente Lite* Exhibits 1-2. The Court ordered Mr. Holland to pay $650 per month *pendente lite* spousal support which turned out to be less per month than what would have been Mrs. Holland's share of Mr. Holland's A. T. & T. pension pursuant to this Court's equitable distribution award.

This Court therefore finds that the entire $24,667.11 which was on deposit in the Wachovia Account on the date of separation is marital property.

## V. *Conclusion*

The parties have stipulated that the Court should divide all marital property evenly and have asked the Court to grant a monetary award to effectuate that intent. The Court therefore awards Mrs. Holland a monetary award in the sum of $12,333.55. Mr. Holland may satisfy this award from any asset he deems appropriate. The fact that all other assets have previously been distributed by the court in no way affects the Court's ruling.