**IN THE COURT OF APPEALS OF IOWA**

No. 15-2014
Filed September 14, 2016

**IN RE THE MARRIAGE OF KAREN K. KORN
AND JOHN C. KORN**

**Upon the Petition of
KAREN K. KORN,**
        Petitioner-Appellant/Cross-Appellee,

**And Concerning
JOHN C. KORN,**
        Respondent-Appellee/Cross-Appellant.
_____

        Appeal from the Iowa District Court for Scott County, Thomas G. Reidel,

Judge.

        Karen Korn appeals, and John Korn cross-appeals, from the property

distribution and alimony provisions of the parties' dissolution decree.  **AFFIRMED**

**AS MODIFIED ON APPEAL; AFFIRMED AS MODIFIED ON CROSS-APPEAL.**

        Richard A. Davidson of Lane & Waterman L.L.P., Davenport, for appellant.

        M. Leanne Tyler of Tyler & Associates, P.C., Bettendorf, for appellee.

        Considered by Danilson, C.J., and Vaitheswaran and Tabor, JJ.

**DANILSON, Chief Judge.**

Karen Korn appeals, and John Korn cross-appeals, from various provisions of the parties' dissolution decree. Karen objects to the trial court's failure to order John to pay child support for their twenty-two-year-old autistic son. She also challenges the amount of spousal support ordered and the property distribution. John requests that a greater portion of his pension accounts be awarded to him. Both parties seek an award of appellate attorney fees. We affirm as modified on Karen's appeal, and affirm as modified on John's cross-appeal. We modify the spousal support award and fix the same in the amount of $825. We also award the entirety of the Vanguard retirement account to John. Finally, we require John to maintain insurance coverage upon the parties' disabled child as he agreed.

**I. Scope and Standard of Review.**

Marriage dissolution proceedings are equitable and our review is de novo. *In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016). Although we give weight to the factual findings of the district court, we are not bound by them. Iowa R. App. P. 6.904(3)(g). Yet, we will disturb a district court determination only when there has been a failure to do equity. *Mauer*, 874 N.W.2d at 106; *see also In re Marriage of Anliker*, 694 N.W.2d 535, 540 (Iowa 2005).

**II. Facts.**

Karen and John were married in 1985. A decree dissolving their thirty-year marriage was filed on November 5, 2015. They had three children together, all of whom are adults. The youngest, B.K., is autistic, employed part-time, and not able to reside independently. B.K. lives with Karen, who provides him with

transportation to and from work and an afternoon recreational program. B.K. works about three hours per day earning $7.50 per hour and receives $475 per month from Social Security.[1] At the time of the dissolution trial, E.K. was twenty-four years old, a college graduate, and not working. E.K. also resides with Karen, who has purchased her a car and provides her free room and board.[2] The oldest of the three children, S.K., is self-sufficient and living in Chicago, Illinois.

At the time of the trial, Karen was fifty-seven years old. She graduated from college with an English degree but did not work outside the home during the marriage. Karen's parents have gifted her substantial sums over the duration of the marriage, all of which were placed in a brokerage account held jointly with John. For the most part, the parties did not use the gifted funds from Karen's family to enhance or maintain their standard of living. At the time of the dissolution, the account had a value of $1.336 million. The family residence was sold in 2015 prior to the dissolution hearing for about $394,000. The proceeds from the sale were placed in the joint account. Karen withdrew $210,000; with those funds she purchased a new residence in cash for $185,000 and the remainder was used for improvements to that residence. In the future, Karen is likely to receive a portion of a trust established by her father, additional inheritance from her mother, and an inheritance from her grandmother's trust. Karen listed her expenses as $3400 per month.

---

[1] B.K.'s disability income is reduced by any earnings or child support. B.K. had an irrevocable trust fund with a value of $93,000 at the time of trial.

[2] E.K. has her own trust fund and a bank account with over $36,000.

John was fifty-eight years old. He has a degree in biomedical engineering and is employed in sales with Fluid Power Engineering. His 2014 gross income was $81,458. At the time of trial, John's projected 2015 gross earnings were $85,000. John had two retirement accounts, a Vanguard account and a Principal account. He provided health insurance for the family through his employment and expressed his intent to continue to provide coverage for B.K. and E.K. so long as federal law allows. Over the last several years of the marriage, John too had received annual gifts from Karen's mother, which were deposited in the brokerage account. John and Karen had also received moneys from John's family during the course of the marriage to assist in the purchase of two different homes, as well as annual gifts of cash for each of the last seven or eight years (ranging from $5000 to $7000 per year). John withdrew $50,000 from the joint brokerage account for a down payment on a new residence. John listed monthly expenses of about $3000.

At trial, Karen sought a $70,000 offset against the proceeds of the house sale for $70,000 paid from property gifted to her from her parents to pay off the mortgage in 2012. John requested that he be awarded the entirety of his retirement accounts. Karen requested spousal support. The parties agreed that any award of child support to B.K. would result in a dollar-for-dollar decrease in B.K.'s Social Security benefits after the first twenty dollars. Karen asked the court to order John to pay a portion of her attorney fees.

**III. Discussion.**

    *A. Karen's appeal.*

    *1. House sale proceeds.* The district court awarded John one-half the proceeds from the sale of the family residence, rejecting Karen's requested set off. On appeal, Karen complains the court's award of one-half the sale proceeds to John was inequitable. We disagree.

    The court found that to set off $70,000 to Karen because inherited funds were used to pay off the mortgage while not giving John credit for $55,000 to $76,000 in gifted funds from his parents was inequitable.[3] The court also noted that John had received gifts from Karen's family totaling from $99,000 to $102,000,[4] to which he had expressly waived any claim. John was awarded $146,988.66 as his remaining portion of funds from the sale of the family residence. We find no failure to do equity in this ruling.

    *2. Child support.* Karen argues she should have been awarded child support because B.K. resides with her. As to support for B.K., the trial court observed, "Karen does not request child support for B.K. . . . Both parties agree that Karen's care for B.K. is a factor in the spousal support analysis." Karen's claim on appeal was not made below and we do not address it. *See Meier*

---

[3] John's mother testified that she and John's father gifted the parties $5000 for a down payment on Karen and John's first home in Illinois. When Karen and John purchased the next family residence, John's parents gifted an additional $15,000 to Karen and John for a down payment. She also testified that yearly gifts were made of $5000 to $7000 each year for the past seven to eight years.

[4] Karen's family gifted funds to Karen and John each year at the maximum allowable limit. Karen testified this occurred for approximately eight years. Karen and John both testified that the last gift to John by Karen's family was in 2012 or 2013. The court found that if John received gifts from Karen's family from 2005 through 2012 he would have received $99,000, and if the gifts were from 2006 through 2013 John would have received $102,000.

*v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."). We also note that B.K. has the benefit of Supplemental Security Income (SSI) in the sum of $475 per month, earnings of $74 per week and a trust fund of $109,000. However, in our de novo review, we do impose upon John the obligation to carry health insurance upon B.K. as he agreed to do during his testimony.

*3. Spousal support.* Karen contends the spousal support ordered was not equitable. She maintains she should be awarded spousal support of $2000 per month.

The trial court considered several factors, including each party's earning capacity, the present standard of living, the ability to pay balanced against the other party's relative needs, and other relevant factors listed in Iowa Code section 598.21A (2013). The court noted, "In this case, absent the large amount of gifted/inherited funds that Karen has access to, Karen would be entitled to alimony. However, inherited and gifted property can be considered in assessing the need for alimony." *See In re Marriage of Hardy*, 539 N.W.2d 729, 732 (Iowa Ct. App. 1995). The court noted that Karen listed monthly expenses of $3405.41, from which it deducted $666 in light of Karen's voluntary payment of E.K.'s car, food, gas, and car insurance. It made no deduction for B.K.'s expenses. The trial court found Karen's investment income was $21,000 per year or $1750 per month and, therefore, the shortfall between her expenses and the income stream from her inherited and gifted property was $514.24. The court ordered John to pay Karen $500 per month in spousal support until Karen reached the age of

sixty-five, at which time Karen "will be eligible to draw Social Security based upon John's contributions" and would have access to her portion of Johns' retirement funds.

Spousal support is not an absolute right. *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 486 (Iowa 2012). "A trial court has considerable latitude when making an award of spousal support. Therefore, we will only disturb the trial court's award of spousal support if it fails to do equity between the parties." *Id.* (citations omitted). Our supreme court quite recently reiterated that "Iowa courts 'are compelled to follow the traditional multifactor statutory framework' set forth in Iowa Code section 598.21A." *Mauer*, 874 N.W.2d at 107.

This is a thirty-year marriage. *See* Iowa Code § 598.21A(1)(a). Both parties are in their late fifties and are healthy, physically and emotionally. *See id.* § 598.21A(1)(b). Both have college degrees; however, Karen has not worked outside the home and has been absent from the employment market for more than three decades. In light of her care-taking functions for B.K., any employment possibility would probably be part-time and less than lucrative. *See id.* § 598.21A(1)(d)-(f). However, Karen has organizational skills that she could put to use outside the home. Moreover, she has substantial non-marital assets available to her, including about $400,000 (earning little or no interest) and at least $21,000 per year in investment income. *See id.* § 598.21A(1)(j); *Mauer*, 874 N.W.2d at 110-11. Moreover, B.K. is not entirely dependent on Karen—John testified he too intended to ensure B.K.'s needs are taken care of, and B.K. receives disability income, some earnings, and has a trust fund. Karen claims monthly expenses of $3400, yet she acknowledges that figure includes the

monthly amounts she is voluntarily providing to E.K. (car—$300; food—$266; gas—$50; and car insurance—$50). In addition, Karen has no mortgage on her home. The parties, by their own choosing, have not depended upon the inherited and gifted moneys for their standard of living. We note spousal support will be tax deductible for John and taxable for Karen. *See id.* § 598.21A(1)(g).

Although John has a mortgage to pay on his home, considering the property awarded to him, he will have sufficient funds to pay it off or nearly so, if he chooses. This could be a savings of about $640 a month to John. We also believe Karen has conservatively estimated her monthly expenses, and so long as B.K. resides with her she will be obligated to maintain a home of sufficient size for the both of them. By our decision today, we have also determined it is appropriate to modify the award of one of John's retirement accounts. Considering these facts and the statutory and other factors, we conclude the decree should be modified to fix spousal support in the sum of $825 per month upon the same terms as ordered by the district court.

### B. John's cross-appeal.

John asserts he is entitled to a greater portion of his retirement accounts because: "John's industry during the marriage and frugality in not spending any of Karen's inherited money, and contributing his yearly gifts, from Karen's mother, to Karen in the divorce, leaves Karen quite well off, with net assets of $1,574,475.28, and John with net assets of approximately $219,273.00."

Inherited and gifted property is not generally subject to division in a dissolution proceeding. *See id.* § 598.21(5) ("The court shall divide all property, *except inherited property or gifts received or expected by one party*, equitably

between the parties after considering all of the following: . . . ." (emphasis added)). John does not claim it is inequitable to set aside Karen's gifted and inherited property.[5]

"Pensions are divisible marital property." *In re Marriage of Sullins*, 715 N.W.2d 242, 247 (Iowa 2006). Here, the trial court evenly divided John's retirement accounts reasoning:

> In this case, the marriage was thirty years in duration. Karen did not work outside the home and had no ability to accumulate retirement assets through employment. While John worked outside the home and provided for the family, Karen engaged in homemaking services for the family and stayed home with the children. John will continue to be able to enhance his retirement through his ongoing employment. Karen is unlikely to accumulate any significant retirement through future employment. The only reason to award John the entirety of the retirement assets would be the large amount of gifted assets that Karen has received from her family. *In essence, this would just be a circular claim by John to obtain a portion of the inherited/gifted funds in another manner.* . . . The court finds that it would not be equitable to deny Karen one-half of the retirement assets accumulated during the marriage through the joint efforts of the parties. No compelling reason exists to deviate from the well-established principal that the parties share equitably in the assets accumulated during the marriage. Accordingly, Karen is awarded one-half of all of John's retirement accounts. A qualified domestic relations order shall be prepared by Karen's attorney to effectuate this transfer.

(Emphasis added.)

The district court's reasoning is akin to the reasoning of the dissent in *In re Marriage of Rhinehart*, 704 N.W.2d 677, 684-87 (Iowa 2005). In *Rhinehart*, the majority concluded a husband should be awarded his entire retirement account

---

[5] Section 598.21(6) provides:
> Property inherited by either party or gifts received by either party prior to or during the course of the marriage is the property of that party and is not subject to a property division under this section except upon a finding that refusal to divide the property is inequitable to the other party or to the children of the marriage.

because of the wife's future interest in a trust of significant value. 704 N.W.2d at 683-84. Iowa Code section 598.21(5)(i) instructs the court to consider each parties' economic circumstances in determining an equitable property division. The *Rhinehart* court stated, "[T]his court has in prior cases considered nonmarital assets that are available for the future support of a spouse in determining an equitable allocation of marital property." *Id.* at 683 (citing *In re Marriage of Boyer*, 538 N.W.2d 293, 296 (Iowa 1995)). The court also noted, "As we said in *Boyer*, [538 N.W.2d at 296,] it is appropriate to adjust the division of marital property 'on the basis that one party, far more than the other, can reasonably expect to enjoy a secure retirement.'" *Id.* at 684.

Both the dissent in *Rhinehart*, and the district court in this case, were concerned with giving any consideration to a spouse's gifted or inherited property in dividing marital property because gifts and inherited property are not to be divided unless it otherwise would be inequitable. *See* Iowa Code § 598.21(6). We acknowledge the reasonableness of the concern expressed by both the dissent in *Rhinehart* and the district court, but we are bound by stare decisis to follow the majority's decision in *Rhinehart*. We also note, the reference in Iowa Code section 598.21(5)(i) requiring consideration of each party's "economic circumstances" in dividing marital property, does not make an exception for the economic circumstances provided by gifts and inherited property.[6]

Here, we find ample support for an unequal division of marital assets that is both fair and gives consideration of various factors set forth in Iowa Code

---

[6] The dissent in *Rhinehart* was also concerned with the fairness of such a division and the fact that the wife's interest in a trust was not yet vested. 704 N.W.2d at 685.

section 598.21. We first note that Karen was awarded the entirety of her family gifts and inheritance, including any appreciation and accumulated income arising during the marriage. The parties through their joint efforts preserved all of these funds—except, as we have previously noted, $70,000 was expended to pay off the home mortgage. This award is not challenged by John on appeal.

Secondly, John was also gifted sums of money from Karen's family totaling at least $99,000. These gifts were in John's name alone but were commingled with Karen's gifted and inherited monies. John has chosen to forego any claim to his individual gifts. Third, John has aided Karen's economic circumstances by living a frugal life, allowing the gifted and inherited monies from Karen's family, including any appreciation and income to accumulate and be preserved.

Our court has observed, "[A] division of pension benefits is not an absolute requirement. The allocation of a pension, like the allocation of all other property interests, comes only after the pension has been considered in the overall scheme of an equitable division." *In re Marriage of Fall*, 593 N.W.2d 164, 167 (Iowa Ct. App. 1999). In the cases of *Rhinehart*, *Boyer*, and *Fall*, retirement accounts were not divided, but rather were awarded to a single spouse to do equity between the parties and, as stated in *Rhinehart*, so each party could "reasonably expect to enjoy a secure retirement." *Rhinehart*, 704 N.W.2d at 684.

Even if we disregard the likelihood Karen may receive additional significant gifts or inheritance, and John is awarded all of his retirement accounts, Karen's current financial circumstances and retirement are secure. But John has only requested one account be awarded in its entirety to him. His request is

more than reasonable and fair, and gives due consideration to the economic circumstances of each party. We modify the property division to award John the entirety of the Vanguard retirement account.

### C. Appellate attorney fees.

Appellate attorney fees are not a matter of right, but rather rest in this court's discretion. *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). We consider "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *In re Marriage of Geil*, 509 N.W.2d 738, 743 (Iowa 1993). We have affirmed on Karen's appeal, and affirmed as modified on John's cross-appeal. Both parties have adequate resources to pay their own attorney fees. Each party will be responsible for their own attorney fees and Karen shall pay the costs of this appeal.

### D. Conclusion.

We affirm on all issues except we modify the amount of spousal support and fix spousal support in the sum of $825 per month on the terms set by the district court, and order the entirety of the Vanguard retirement account to be awarded to John. Additionally, we require John—as he agreed—to provide health insurance for B.K. through his employer as he is currently providing for so long as the coverage or a comparable plan is available; and if no such plan is available or John discontinues his employment, John shall minimally provide supplemental coverage to B.K.'s Medicaid coverage.

**AFFIRMED AS MODIFIED ON APPEAL; AFFIRMED AS MODIFIED ON CROSS-APPEAL.**