*In re* NEAL

Docket No. 199884. Submitted February 10, 1998, at Grand Rapids. Decided July 24, 1998, at 9:05 A.M. Leave to appeal denied, 459 Mich ___.

Virginia Neal petitioned the Van Buren County Probate Court for the appointment of a guardian and a conservator for each of her twin adult sons, Richard Neal and Lawrence Neal. Both Richard and Lawrence, now in their forties, have been mentally impaired and retarded in their development since birth. The petition sought appointment of a guardian under the provision of § 444 of the Revised Probate Code, MCL 700.444; MSA 27.5444, relating to the appointment of a guardian for a legally incapacitated person. The probate court, Frank D. Willis, J., over the respondents' objection that the proceedings should be conducted under the provisions of chapter 6 of the Mental Health Code, MCL 330.1600 *et seq.*; MSA 14.800(600) *et seq.*, determined that the respondents were legally incapacitated persons within the meaning of the Revised Probate Code and, upon finding that each respondent lacked the capacity to do some of the tasks necessary to take care of himself, appointed the petitioner and two other family members as coguardians and coconservators of each of the respondents. The respondents appealed to the Van Buren Circuit Court, which, Meyer Warshawsky, J., affirmed. The respondents appealed to the Court of Appeals by leave granted. The appeal with respect to Lawrence Neal was dismissed by stipulation.

The Court of Appeals *held*:

1. Section 604(2) of the Mental Health Code, MCL 330.1604(2); MSA 14.800(604)(2), provides that, except in the case of minors, a guardian for a developmentally disabled person shall be made pursuant to chapter 6 of the Mental Health Code. Review of the record clearly shows that Richard Neal was a developmentally disabled person within the meaning of the Mental Health Code. Accordingly, because the appointment of a guardian for Richard should have proceeded under the provisions of the Mental Health Code, the probate court erred in conducting the guardianship proceedings under the provisions of § 444 of the Revised Probate Code, notwithstanding that Richard might also be considered a legally incapacitated person under the provisions of the Revised Probate Code.

2. Because the Legislature has provided in the provisions of the Mental Health Code relating to the appointment of a guardian for a developmentally disabled person certain safeguards not required for the appointment of a guardian for a legally incapacitated person under the Revised Probate Code and has mandated that the appointment of a guardian of a developmentally disabled adult be made under the Mental Health Code, the probate court's appointment of the respondent's guardians under the provisions of the Revised Probate Code and the circuit court's affirmance of the probate court's order cannot be said to be harmless.        .

Reversed and remanded.

GUARDIAN AND WARD — DEVELOPMENTALLY DISABLED PERSONS — LEGALLY INCAPACITATED PERSONS — MENTAL HEALTH CODE — REVISED PROBATE CODE — HARMLESS ERROR.

The proceedings relating to appointment of a guardian of a developmentally disabled adult must be conducted pursuant to the provisions of the Mental Health Code rather than pursuant to the provisions of the Revised Probate Code relating to the appointment of a guardian for a legally incapacitated person; the appointment of a guardian for a developmentally disabled adult under the provisions of the Revised Probate Code rather than the provisions of the Mental Health Code cannot be deemed to be harmless error (MCL 330.1604[2], 700.444; MSA 14.800[604][2], 27.5444).

*Schuitmaker, Clarke & Cooper, P.C.* (by *Harold Schuitmaker*), for the petitioner.

*David Michael Stokes* and *Calvin A. Luker,* for the respondent.

Before: GRIFFIN, P.J., and HOLBROOK, JR., and NEFF, JJ.

NEFF, J. Respondent Richard Neal appeals by leave granted the circuit court decision that affirmed the probate court's appointment of limited coguardians and coconservators for him pursuant to article 4 of

the Revised Probate Code, MCL 700.401 *et seq.*; MSA 27.5401 *et seq.*[1] We reverse and remand.

I

Richard and his twin brother Lawrence were born January 1, 1949. Because of a medical complication arising from the incompatibility of blood between the boys' parents, both Lawrence and Richard became mentally impaired and were retarded in their development. Richard's family made a concerted effort to ensure that both boys received an education and upbringing that would prepare them to be as independent as possible. For over twenty years, both Lawrence and Richard maintained steady employment. However, for most of their lives their financial and other living arrangements have been handled by their parents and other immediate family members in what both parties describe as a "de facto guardianship."

Following the death of their father in 1992, both brothers sought more independence from their family. They contacted the Van Buren County Community Mental Health agency for assistance and developed new friendships through that agency's "circle of friends" support group program. Richard quit his full-time job in South Haven to move into the Bangor home of his friend Marilyn Schneider, whom he intends to marry. Although Richard obtained a part-time job bagging groceries, his job change resulted in a loss of health insurance benefits.

In October 1995, Richard's mother, Virginia Neal, petitioned the probate court for appointment as

---

[1] Respondent Lawrence Neal, for whom coguardians and coconservators were also appointed, has withdrawn his appeal from our consideration.

guardian and conservator of both Lawrence and Richard, as legally incapacitated persons, pursuant to the Revised Probate Code. Lawrence and Richard filed a motion for summary disposition, arguing that because they were developmentally disabled, any guardianship proceedings should proceed under chapter 6 of the Mental Health Code. The probate court denied the motion and issued a lengthy and detailed opinion and order appointing Lawrence and Richard's mother, brother, and sister as limited coguardians and coconservators for Lawrence and Richard pursuant to the Revised Probate Code.

The circuit court affirmed the decision of the probate court, finding that there was no error in the trial court's characterization of Lawrence and Richard as legally incapacitated and that a determination whether they were also developmentally disabled was unnecessary and merely exalted form over function. Richard now appeals by leave granted.

II

Richard first argues that the probate court erred in appointing a guardian under the procedures contained in article 4 of the Revised Probate Code, MCL 700.401 *et seq.*; MSA 27.5401 *et seq.* Richard insists that he is, and continues to be, a person with a developmental disability; therefore, any guardianship proceedings should have been conducted according to chapter 6 of the Mental Health Code, MCL 330.1600 *et seq.*; MSA 14.800(600) *et seq.* We agree.

A

The Revised Probate Code and the Mental Health Code each provide mechanisms through which an

interested person can petition the probate court for the appointment of a guardian and which mirror each other to a significant degree. Importantly however, the Mental Health Code provides that, except in the case of minors, a guardian for a developmentally disabled person may be made pursuant only to chapter 6 of the Mental Health Code. MCL 330.1604(2); MSA 14.800(604)(2). Accordingly, if Richard was a developmentally disabled person at the time of the guardianship proceedings, then only chapter 6 of the Mental Health Code could be used to appoint a guardian for him, regardless of whether Richard also satisfied the definition of a legally incapacitated person as defined in the Revised Probate Code.[2]

At all times relevant to this appeal, the Mental Health Code defined "developmental disability" as "an impairment of general intellectual functioning or adaptive behavior" that "has continued since its origination or can be expected to continue indefinitely" and that "constitutes a substantial burden to the impaired person's ability to perform normally in society" and that "is attributable to . . . [m]ental retardation, cerebral palsy, epilepsy, or autism," or to any other condition producing a similar impairment or to dyslexia resulting from any of the above. MCL

---

[2] Section 8(2) of the Revised Probate Code, MCL 700.8(2); MSA 27.5008(2), defines a "legally incapacitated person" as follows:

> [A] person . . . who is impaired by reason of mental illness, mental deficiency, physical illness or disability, chronic use of drugs, chronic intoxication, or other cause, to the extent that the person lacks sufficient understanding capacity to make or communicate informed decisions concerning his or her person.

We express no opinion regarding whether Richard also falls within this definition of a legally incapacitated person.

330.1600(e); MSA 14.800(600)(e).[3] We have carefully reviewed the record and find that, without question, Richard falls within this definition.[4] Accordingly, because Richard is a developmentally disabled person, the probate court erred in conducting the guardianship proceedings pursuant to article 4 of the Probate Code.

---

[3] The Legislature has amended this definition, effective March 28, 1996, to read as follows:

"Developmental disability" means either of the following:

(a) If applied to an individual older than 5 years, a severe, chronic condition that meets all of the following requirements:

(i) Is attributable to a mental or physical impairment or a combination of mental and physical impairments.

(ii) Is manifested before the individual is 22 years old.

(iii) Is likely to continue indefinitely.

(iv) Results in substantial functional limitations in 3 or more of the following areas of major life activity:

(A) Self-care.

(B) Receptive and expressive language.

(C) Learning.

(D) Mobility.

(E) Self-direction.

(F) Capacity for independent living.

(G) Economic self-sufficiency.

(v) Reflects the individual's need for a combination and sequence of special, interdisciplinary, or generic care, treatment, or other services that are of lifelong or extended duration and are individually planned and coordinated. [MCL 330.1100a(19); MSA 14.800(100a)(19).]

[4] Richard has been clinically diagnosed as being mildly mentally retarded. He cannot read, write, or dial a telephone. He can do only the simplest of arithmetic and is unable to carry out monetary transactions except in single dollar amounts. He cannot pay his monthly expenses without assistance and is unable to make medical decisions for himself such as when to see a doctor or dentist. Although he is capable of learning and keeping a simple daily routine, his mental retardation renders him unable to comprehend the long-term consequences of his decisions and precludes him from performing normally in society.

B

The coguardians argue that any error in the probate court's use of the wrong statutory procedure was harmless. We disagree.

The Mental Health Code provides safeguards to protect the substantive rights of the developmentally disabled. *Michigan Ass'n for Retarded Citizens v Wayne Co Probate Judge*, 79 Mich App 487, 492; 261 NW2d 60 (1977). Our Supreme Court has stated that the powers of the probate court to appoint a guardian are purely statutory and that the requirements of the applicable statutes must be strictly observed. *Stevens v Stevens*, 266 Mich 446, 449; 254 NW 162 (1934). Here, the mandate of MCL 330.1604(2); MSA 14.800(604)(2) is clear and unambiguous: "An appointment of a guardian for a developmentally disabled person shall be made only pursuant to [the Mental Health Code]." The word "shall" indicates a mandatory, nondiscretionary provision. *In re Hall-Smith*, 222 Mich App 470, 472; 564 NW2d 156 (1997). Consequently, the appointment of a guardian for a developmentally disabled person under the Revised Probate Code would directly contradict the Legislature's clear mandate that such proceedings must be conducted pursuant to the Mental Health Code.

Appellees' argument, that the facts of this case would support the establishment of a guardianship under either code ignores the Legislature's decision to afford certain safeguards to the developmentally disabled not afforded to persons alleged to be legally incapacitated.[5] These safeguards would be nullified if

[5] Although the guardianship provisions of chapter 6 of the Mental Health Code are virtually identical to the provisions of article 4 of the

a party petitioning for the appointment of a guardian for a developmentally disabled person were allowed to proceed under the Revised Probate Code.

---

Revised Probate Code in several respects, in certain areas the provisions of chapter 6 of the Mental Health Code appear to be more stringent. For example, the Mental Health Code requires that a petition for guardianship for a developmentally disabled person must be accompanied by a report that contains (1) a description of the person's developmental disability, (b) current evaluations of the person's mental, physical, social, and educational condition, adaptive behavior, and social skills, (c) an opinion whether guardianship is needed, the type and scope of the guardianship, and the reasons for the guardianship, (d) a recommendation concerning appropriate rehabilitation and living arrangements, (e) the signatures of those who performed the evaluations, one being a physician or psychologist who is competent in evaluating persons with developmental disabilities, and (f) a list of the person's medications. MCL 330.1612; MSA 14.800(612). Although the Revised Probate Code provides for the creation of a similar report, preparation and submission of the report is not mandatory; rather, the Revised Probate Code leaves the preparation of the report to the discretion of the probate court. MCL 700.443(3),(4),(5); MSA 27.5443(3), (4), (5).

When appointing a guardian pursuant to the Mental Health Code, the probate court is required to make specific findings on the record with regard to the nature and extent of the person's impairment, the person's capacity to care for himself, the person's ability to manage his financial affairs, and the appropriateness of the proposed living arrangement. MCL 330.1618; MSA 14.800(618). The Revised Probate Code contains no such requirement. Furthermore, any limited guardianship established for developmentally disabled persons must be substantially and specifically limited in scope only to the extent necessitated by the individual's actual mental and adaptive limitations. MCL 330.1602; MSA 14.800(602). To this end, the probate court must specifically define the powers and duties of the guardian. *Id.*; MCL 330.1618; MSA 14.800(618) and MCL 330.1620; MSA 14.800(620).

Other provisions contained in chapter 6 of the Mental Health Code are arguably less stringent than article 4 of the Revised Probate Code. Under article 4 of the Revised Probate Code, if a legally incapacitated person indicates a preference to have a particular person appointed as guardian, the probate court must appoint that designee unless the person is unsuitable or unwilling to serve as guardian. MCL 700.454(2); MSA 27.5454(2). However, under chapter 6 of the Mental Health Code, the probate court need only give "due consideration" to the developmentally disabled person's preference regarding the person to be appointed guardian. MCL 330.1628(2); MSA 14.800(628)(2).

We conclude that only chapter 6 of the Mental Health Code may be used to appoint a guardian for a developmentally disabled adult, regardless of whether that person also satisfies the definition of a legally incapacitated person as defined in the Revised Probate Code. The probate court erred in not following this clear statutory mandate, and the circuit court erred in affirming the decision of the probate court. By conducting the guardianship proceedings under the Revised Probate Code, the probate court denied Richard the protections that the Legislature has specifically afforded to the developmentally disabled under the Mental Health Code. Because this error is not harmless, we reverse the judgment of the circuit court and remand this case with instructions that the probate court dissolve the guardianships and conservatorships. Petitioner is free to file a new petition for guardianship pursuant to the Mental Health Code.

III

Because of our determination that reversal is required, we need not address Richard's remaining issues on appeal.

Reversed and remanded. We do not retain jurisdiction.