BIONDO v BIONDO

Docket No. 294694. Submitted January 5, 2011, at Detroit. Decided March 15, 2011, at 9:00 a.m.

James F. and Mary L. Biondo were granted a consent judgment of divorce in the Oakland Circuit Court, Cheryl A. Matthews, J. The judgment equally divided the martial estate and required them to "equalize their social security benefits." When Mary sought a court order compelling performance of the judgment's social security provision, James asserted that federal law preempted its enforcement. The court entered an order providing that it would enforce the social security provision. James appealed by leave granted.

The Court of Appeals *held*:

1. Federal law preempts state law under the Supremacy Clause, US Const, art VI, cl 2, when Congress so intends. Federal law generally does not preempt state laws governing divorce or domestic relations. State family and family-property laws must do major damage to clear and substantial federal interests before the Supremacy Clause will demand that state law be overridden.

2. Section 407(a) of the Social Security Act, 42 USC 407(a), prohibits the assignment of social security benefits and removes social security benefits from the reach of attachment, garnishment, or other legal process. 42 USC 407(a) bars automatic, direct payments of social security benefits from one spouse to another and offsetting awards intended to compensate one spouse for the value of the benefit expected by the other. 42 USC 407(a) preempts the social security equalization provision in the parties' consent judgment.

3. Although federal law preempts a portion of the parties' judgment of divorce, the trial court still possessed subject-matter jurisdiction to enter the judgment.

4. The inclusion of the social security equalization provision was the result of a mutual mistake of the parties. Therefore, the trial court may modify the judgment's property-settlement provisions on remand.

5. The trial court, on remand, may consider the parties' anticipated social security benefits as one factor, among others, to be considered when devising an equitable distribution of the marital property. The trial court may not treat social security benefits as tantamount to a marital asset but may take into account, in a general sense, the extent to which social security benefits received by the parties affect the following factors for consideration when dividing marital property: (a) the duration of the marriage, (2) the contributions of the parties to the marital estate, (3) the age of the parties, (4) the health of the parties, (5) the life status of the parties, (6) the necessities and circumstances of the parties, (7) the earning abilities of the parties, (8) the past relations and conduct of the parties, and (9) general principles of equity.

Reversed and remanded.

1. CONSTITUTIONAL LAW — SUPREMACY CLAUSE — CONFLICT OF LAWS — DIVORCE — DOMESTIC RELATIONS.

Federal law preempts state law under the Supremacy Clause when Congress so intends; although federal law generally does not preempt state laws governing divorce or domestic relations, the Supremacy Clause will demand that state law be overridden when state family and family-property laws do major damage to clear and substantial federal interests (US Const, art VI, cl 2).

2. CONSTITUTIONAL LAW — SUPREMACY CLAUSE — CONFLICT OF LAWS — SOCIAL SECURITY — MARTIAL PROPERTY.

The Social Security Act prohibits the assignment of social security benefits and removes social security benefits from the reach of attachment, garnishment, or other legal process; the Supremacy Clause preempts state laws regarding the division of martial property only to the extent that such laws are inconsistent with the provision of the Social Security Act prohibiting the assignment, attachment, or garnishment of social security benefits (US Const, art VI, cl 2; 42 USC 407[a]).

3. DIVORCE — MARITAL PROPERTY — SOCIAL SECURITY BENEFITS.

A trial court dividing marital property may consider the following factors: (1) the duration of the marriage, (2) contributions of the parties to the marital estate, (3) the age of the parties, (4) the health of the parties, (5) the life status of the parties, (6) the necessities and circumstances of the parties, (7) the earning abilities of the parties, (8) the past relations and conduct of the parties, and (9) general principles of equity; although the court may not treat social security benefits as tantamount to a marital

asset, the court may take into account, in a general sense, the extent to which social security benefits received by the parties affect the factors the court considers in dividing marital property (42 USC 407[a]).

*Gornbein Smith Peskin-Shepherd PLLC* (by *Danielle A. Smith*) for James F. Biondo.

*Colleen V. Ronayne* for Mary L. Biondo.

Before: K. F. KELLY, P.J., and GLEICHER and STEPHENS, JJ.

GLEICHER, J. James Franklin Biondo and Mary Lynne Biondo were married for more than 40 years. Their consent judgment of divorce equally divided the marital estate and required them to "equalize their social security benefits." When Mary Biondo sought a court order compelling performance of the judgment's social security provision, James Biondo asserted that federal law preempted its enforcement. The circuit court ruled that "[a] deal is a deal," and declined to strike the social security provision from the divorce judgment. We granted leave to appeal to consider whether federal law preempts the consent judgment's social security formula. We hold that it does, reverse the circuit court ruling to the contrary, and remand for further proceedings.

### I. UNDERLYING FACTS AND PROCEEDINGS

The parties married in 1964, and in July 2007 consented to the entry of a divorce judgment. During the marriage, James Biondo worked for Ford Motor Company, while Mary Biondo cared for the parties' two children, who are now adults. The marital property included a home in Birmingham, two vehicles, and several bank accounts. The consent judgment "reserved

for future adjudication" the issue of spousal support derived from "earned income," and forever barred spousal support based on nonearned income. A specific provision, entitled "Social Security Benefits," obligated the parties to "equalize their social security benefits." After entry of the divorce judgment, the parties stipulated to the entry of a qualified domestic relations order (QDRO), which allocated to Mary Biondo 50 percent of James Biondo's accrued retirement benefits as of the date of the divorce. The parties agree that they intended the consent judgment's property division to equally divide the marital estate.

In July 2009, Mary Biondo filed in the circuit court a motion seeking "compliance" with the judgment's "Social Security Benefits provision." Mary Biondo averred that James Biondo had failed to make timely and full social security equalization payments. James Biondo responded that the judgment's social security formula violated federal law, and that any order enforcing the social security benefits term would be invalid. After a motion hearing, the circuit court entered an order announcing in relevant part that "the Court will enforce the property settlement provision regarding Social Security Benefits contained in the July 10, 2007 consent judgment of divorce." We granted James Biondo's application for leave to appeal. *Biondo v Biondo*, unpublished order of the Court of Appeals, entered February 23, 2010 (Docket No. 294694).

## II. ANALYSIS

James Biondo contends that the circuit court "lack[ed] subject matter jurisdiction to enforce the social security property provision of the parties' . . . judgment of divorce." According to James Biondo, 42 USC 407 preempts state courts from transferring any of an individual's social

security benefits "by any legal process to any . . . person other than that person whom the Federal Government intended to be the recipient of those benefits." "Whether a trial court has subject-matter jurisdiction is a question of law that this Court reviews de novo." *Etefia v Credit Technologies, Inc*, 245 Mich App 466, 472; 628 NW2d 577 (2001). We also review de novo whether federal law preempts state law. *People v Kanaan*, 278 Mich App 594, 601; 751 NW2d 57 (2008).

"Under the Supremacy Clause of the United States Constitution, US Const, art VI, cl 2, federal law preempts state law where Congress so intends." *Konynenbelt v Flagstar Bank, FSB*, 242 Mich App 21, 25; 617 NW2d 706 (2000). Generally, federal law does not preempt laws governing divorce or domestic relations, a legal arena belonging to the states rather than the United States. *Hisquierdo v Hisquierdo*, 439 US 572, 581; 99 S Ct 802; 59 L Ed 2d 1 (1979). Thus, "[s]tate family and family-property law must do major damage to clear and substantial federal interests before the Supremacy Clause will demand that state law be overridden." *Id.* (quotation marks and citation omitted). Here, we consider whether the federal interest in social security benefits preempts enforcement of the parties' agreement to equalize their social security benefits.

We begin our analysis by consulting the specific federal statute at issue, § 407(a) of the Social Security Act:

> The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law. [42 USC 407(a)].

James Biondo's preemption argument rests on the language of this statute prohibiting transfer, assignment, "execution, levy, attachment, garnishment," or application of "other legal process" to a beneficiary's right to collect social security benefits. In *Hisquierdo*, 439 US 572, the United States Supreme Court construed strikingly similar language in the Railroad Retirement Act of 1974 (RRA), 45 USC 231 *et seq.*[1] The parties in *Hisquierdo* divorced in California. *Hisquierdo*, 439 US at 573. The California Supreme Court ruled that the husband's railroad retirement benefits constituted community property subject to division in the divorce judgment. *Id.* The United States Supreme Court reversed the California Supreme Court, holding that 45 USC 231m preempted California's community-property law. *Hisquierdo*, 439 US at 590. The United States Supreme Court explained that the statutory language comprising 45 USC 231m reflected congressional intent that a "specified beneficiary" would receive benefits undiminished by "attachment and anticipation." *Hisquierdo*, 439 US at 582. The statute's "critical terms" prohibiting assignment, garnishment, attachment or subjection to legal process "prevent[] the vagaries of state law from disrupting the national scheme, and guarantee[] a national uniformity that enhances the effectiveness of congressional policy." *Id.* at 582, 584.

---

[1] The statutory language at issue in *Hisquierdo*, 45 USC 231m(a), directs that

> not withstanding any other law of the United States, or of any State, territory, or the District of Columbia, no annuity or supplemental annuity shall be assignable or be subject to any tax or to garnishment, attachment, or other legal process under any circumstances whatsoever, nor shall the payment thereof be anticipated[.]

Notably, in *Hisquierdo* the Supreme Court interpreted § 231m as not only barring automatic, direct payments of RRA benefits from one spouse to another, but as also prohibiting "offsetting award[s]" intended to compensate one spouse for the value of the benefit expected by the other. *Id.* at 588. The Supreme Court reasoned that because § 231m contemplates that payments are not to be "anticipated," an award intended to offset future payments would permit a divorcing spouse to receive a beneficial interest in retirement payments that had not yet accrued to the other spouse. *Id.* The Court further observed that a counterbalancing award of RRA benefits "would upset the statutory balance and impair [the retiree's] economic security just as surely as would a regular deduction from his benefit check." *Id.* Consequently, the Court concluded that state marital-property laws must yield to Congress's determination that RRA benefits "should go to the retired worker alone . . . ." *Id.* at 590.

Like 45 USC 231m of the RRA, 42 USC 407(a) prohibits the assignment of social security benefits and removes social security benefits from the reach of "attachment, garnishment, or other legal process . . . ." That virtually identical language appears in both statutes compels us to apply *Hisquierdo*, and to declare that § 407(a) preempts the social security equalization provision in the Biondos' consent judgment. We find additional support for our holding in *Hisquierdo* itself, where the Supreme Court specifically analogized the RRA to the Social Security Act, observing that the former RRA "was amended several times to make it conform more closely to the existing Social Security Act." *Hisquierdo*, 439 US at 574 n 3.[2]

---

[2] The Supreme Court in *Hisquierdo* also identified another similarity shared by the RRA and the Social Security Act: "Like Social Security, and

Furthermore, we find it significant that Congress created an exception to 42 USC 407(a) when it enacted 42 USC 659(a), which permits the states to employ social security benefits for the enforcement of child support and alimony obligations. Application of social security benefits for marital property purposes remains specifically excluded from this exception, because Congress declared in 42 USC 659(i)(3)(B)(ii) that the term "alimony" does not encompass "any payment or transfer of property or its value by an individual to the spouse or a former spouse of the individual in compliance with any community property settlement, equitable distribution of property, or other division of property between spouses or former spouses." Therefore, we conclude that the circuit court erred by enforcing the consent judgment's social security provision.

In reaching this conclusion, we specifically reject James Biondo's suggestion that the circuit court did not possess subject-matter jurisdiction to enter the terms of the parties' consent judgment of divorce. That federal law has preempted a portion of the parties' consent judgment of divorce in no manner deprives the circuit court of subject-matter jurisdiction in this divorce matter. The Social Security Act simply does not divest state courts of subject-matter jurisdiction in divorce cases. Rather, the Supremacy Clause preempts state laws regarding the division of marital property only to the extent they are inconsistent with 42 USC 407(a). The Michigan Supreme Court has explained this distinction as follows:

> The loose practice has grown up, even in some opinions, of saying that a court had no "jurisdiction" to take certain

unlike most private pension plans, railroad retirement benefits are not contractual. Congress may alter, and even eliminate, them at any time." *Id.* at 575.

> legal action when what is actually meant is that the court had no legal "right" to take the action, that it was in error. If the loose meaning were correct it would reduce the doctrine of *res judicata* to a shambles and provoke endless litigation, since any decree or judgment of an erring tribunal would be a mere nullity. [*Buczkowski v Buczkowski*, 351 Mich 216, 222; 88 NW2d 416 (1958).]

Although the circuit court erred by ordering the social security equalization, it did not exceed its subject-matter jurisdiction in doing so. Const 1963, art 6, § 13; MCL 552.6(1).

Having determined that federal law preempts the social security equalization formula in the Biondos' divorce judgment, we now address the consequences of this decision.

> It is a well-settled principle of law that courts are bound by property settlements reached through negotiations and agreement by parties to a divorce action, in the absence of fraud, duress, mutual mistake, or severe stress which prevented a party from understanding in a reasonable manner the nature and effect of the act in which she was engaged. [*Keyser v Keyser*, 182 Mich App 268, 269-270; 451 NW2d 587 (1990).]

This Court has described a mutual mistake as a situation "where the parties have a common intention," but the resulting judgment rests on a common error. *Villadsen v Villadsen*, 123 Mich App 472, 477; 333 NW2d 311 (1983) (quotation marks and citation omitted). In drafting the consent judgment, the parties incorrectly deemed their social security benefits marital property, to be equally divided along with the rest of the marital estate. Because no prior published Michigan caselaw removed social security benefits from the realm of marital property, we view the consent judgment's inclusion of the social security equalization term as a mutual

mistake. Accordingly, on remand the circuit court may modify the judgment's property-settlement provisions.

We anticipate that on remand the Biondos will contest whether the amount of the parties' anticipated social security benefits may play any part in a modified judgment reallocating marital property. We consider this important question to offer guidance to the parties and the circuit court. In *Sparks v Sparks*, 440 Mich 141, 159-160; 485 NW2d 893 (1992), our Supreme Court set forth the following relevant factors for consideration when dividing marital property: "(1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity." The amount of a spouse's anticipated or received social security benefits qualifies as relevant to several of the *Sparks* factors, including the contributions each made to the marital estate, their "necessities and circumstances," and "general principles of equity." *Id.* at 160.

A number of state courts have addressed the extent to which a divorce court may consider social security benefits when formulating an equitable division of property. The Iowa Supreme Court has held that social security benefits may generally inform a property division:

> We see a crucial distinction between: (1) adjusting property division so as to indirectly allow invasion of benefits; and (2) making a general adjustment in dividing marital property on the basis that one party, far more than the other, can reasonably expect to enjoy a secure retirement. It should not invalidate a property division if a disproportionate expectation regarding social security ben-

efits is acknowledged in the court's assessment of the equities. [*In re Marriage of Boyer*, 538 NW2d 293, 296 (Iowa, 1995).]

In *Boyer*, the Iowa Supreme Court rejected the notion that "the federal preemption legislation requires state courts under these circumstances to purge so obvious an economic reality" as disproportionate anticipated social security benefits. *Id*. Similarly, the Maine Supreme Judicial Court has reasoned:

> The court's role in property division is to accomplish a just division that takes into account "all relevant factors." Just as few married couples engaged in a serious assessment of their retirement resources would ignore the availability of Social Security benefits, courts should not be required to ignore reality and fashion a distributive award of the parties' retirement and other marital assets divorced from the actual "economic circumstances of each spouse at the time the division of property is to become effective." 19-A M.R.S. § 953(1)(C); *see also In re Marriage of Boyer*, 538 N.W.2d [at] 293-94 . . . (stating that "a state court is not required to pretend to be oblivious of the fact that one party expects benefits that will not be enjoyed by the other"). Failing to consider Social Security benefit payments a spouse can reasonably be expected to receive in the near future may result in a distorted picture of that spouse's financial needs, and, in turn, an inequitable division of the marital property. [*Depot v Depot*, 2006 ME 25, ¶ 17; 893 A2d 995 (2006).]

And the Colorado Court of Appeals has expressed: "[W]hile a trial court may not distribute marital property to offset the computed value of Social Security benefits, it may premise an unequal distribution of property—using, for example, a 60-40 formula instead of 50-50—on the fact that one party is more likely to enjoy a secure retirement." *In re Marriage of Morehouse*, 121 P3d 264, 267 (Colo App, 2005).

We join the majority of state courts that have considered this question, and hold that the circuit court may consider the parties' anticipated social security benefits as one factor, among others, to be considered when devising an equitable distribution of marital property. We caution that in endeavoring to divide the marital estate, the court may not treat social security benefits as tantamount to a marital asset. Instead, the circuit court may take into account, in a general sense, the extent to which social security benefits received by the parties affect the *Sparks* factors.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.