*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Guardianship of ANNA-MARIE MARGARET BAZAKIS

---

CHRISTY BOMBA, Coguardian of ANNA-MARIE MARGARET BAZAKIS, a legally protected person,

      Appellant,

v

ANDREW BAZAKIS, Coguardian of ANNA-MARIE MARGARET BAZAKIS, and ANNA-MARIE MARGARET BAZAKIS,

      Appellees.

FOR PUBLICATION
June 23, 2022
9:20 a.m.

No. 358276
Saginaw Probate Court
LC No. 20-140294-DD

---

Before: RONAYNE KRAUSE, P.J., and MURRAY and O'BRIEN, JJ.

MURRAY, J.

Appellant Christy Bomba appeals by right the August 4, 2021, order granting appellee Andrew Bazakis's motion to compel Bomba to comply with the court's January 5, 2021, order regarding Supplemental Security Income (SSI) benefits for their daughter, Anna-Marie Margaret Bazakis (AM). The court additionally confirmed the same order regarding parenting time and ordered Bomba to provide Bazakis with access to bank accounts related to AM. We affirm in part, reverse in part, and remand for further proceedings.

## I. FACTUAL BACKGROUND

The disputes between the parties surround the parenting time available to Bomba and the legality of a court order regarding AM's SSI payments. In the judgment of divorce, the parties were awarded joint physical and legal custody of AM, who is developmentally disabled. AM lives equally with both parents, living at each parent's home on a two-week basis. The parties also agreed to be and are AM's coguardians.

-1-

Years after the divorce, Bomba applied for Social Security Disability benefits for AM and was designated by the Social Security Administration as AM's representative payee.[1] By early 2021, it was determined that AM was entitled to a $794 monthly SSI payment, and she also received a $2,381 SSI disbursement for back payments.

Soon after, disputes arose between the parties on several fronts. With respect to the SSI benefits, Bazakis was of the opinion that Bomba was failing to provide him information on the SSI application submitted on AM's behalf, information relative to the benefits awarded, and information (such as account numbers and passwords) for the account where the benefits were deposited. Regarding parenting time, the parties were unable to agree on a holiday schedule, so Bazakis moved the court to enter one for them.

The court ultimately entered an order on January 5, 2021, ordering that parenting time should continue alternating on a two-week basis and that AM spends Mother's Day with Bomba and Father's Day with Bazakis. It further split December 22 to December 24, December 24 to December 26, Thanksgiving Day, and Easter based on even and odd years. The parties were also ordered to maintain the normal two-week rotation, and there would be no special holiday schedule for other, specifically named holidays. With respect to the SSI payments, the court ordered that the Social Security Administration be informed of the parties' guardianship status and that any SSI payments received be split by the parties.

That order, however, did not resolve the parties' differences. Thus, a few months later, Bazakis moved to compel compliance with the court's January 5, 2021, order, asserting (amongst other things not relevant on appeal) that the Social Security Office refused to discuss AM's benefits or disbursements with him because he was not listed as a copayee or coguardian. Bazakis also argued that he could not access AM's online information because Bomba refused to provide "website portal access."

Ultimately, the court ordered that (1) Bomba would remain as AM's representative payee; (2) if there is portal access to the SSI account Bomba should provide access to Bazakis; (3) Bomba was to create a new bank account exclusively for AM and provide Bazakis with the password; (4) all other of AM's bank accounts should be joint with the coguardians; (5) if Bomba receives as representative payee a monthly check from the Social Security Administration, she was to provide a photocopy to Bazakis, and 50% of each check would go to Bazakis through an account chosen by his counsel, and (6) its previous order regarding both Easter and AM's birthday would remain in effect.

## II. ANALYSIS

---

[1] We do not consider Bazakis's Exhibit F on appeal, titled "A Guide for Representative Payees," as it was not part of the lower court record. MCR 7.210(A)(1); *In re Rudell Estate*, 286 Mich App 391, 405; 780 NW2d 884 (2009).

## A. JURISDICTION OVER THE APPEAL

As a preliminary issue, Bazakis argues that this Court lacks jurisdiction over this appeal because the probate court's August 4, 2021, order was not a final order since it merely reiterated rulings from the court's August 17, 2020, and January 5, 2021, orders. We reject this argument.

The "final judgment" or "final order" definitions in MCR 7.202 apply for purposes of determining whether a judgment or order of the circuit court or Court of Claims is appealable of right to this Court under MCR 7.203(A)(1). MCR 5.801(A), however, defines the probate court orders that are appealable of right to this Court. In particular, MCR 5.801(A)(3) defines "a final order affecting the rights and interests of an adult or a minor in a guardianship proceeding under the Estates and Protected Individuals Code" as appealable of right. Bosakis offers no legal authority holding that an amended order that affects the interests of an interested person with finality cannot be a final order. Here, the August 4, 2021, order appealed from provides specific instructions on how to handle the SSI payments and provides that the court's prior order on birthdays and holidays will remain in effect. Thus, the order affects with finality Bomba's interests in those matters, making the order appealable of right under MCR 5.801(A).

## B. JURISDICTION TO ORDER DISBURSEMENT OF SSI BENEFITS

Turning to the merits, the main issue on appeal is whether the probate court's order requiring Bomba to pay half of AM's monthly SSI benefits to Bazakis is preempted by the Social Security Act (SSA),[2] and therefore void because the probate court lacked subject-matter jurisdiction to enter it. Our review of the legal question of whether a federal law preempts state action is de novo, *Foster v Foster*, 505 Mich 151, 165; 949 NW2d 102 (2020), as it is with the interpretation of statutes, *id*, and with the general question of whether a court has subject-matter jurisdiction. *Elba Twp v Gratiot Co Drain Comm'r*, 493 Mich 265, 278; 831 NW2d 204 (2013).

The Supremacy Clause of the United States Constitution provides as follows:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding. [US Const, art VI, cl 2.]

"There are three types of federal preemption: express preemption, conflict preemption, and field preemption." *In re Vansach Estate*, 324 Mich App 371, 390; 922 NW2d 136 (2018) (quotation marks and citation omitted). Express preemption occurs when a federal statute contains a clause expressly addressing preemption. *Ter Beek v City of Wyoming*, 495 Mich 1, 11; 846 NW2d 531 (2014). Federal preemption can also be implied, which is the category conflict and field preemption occupy. *Grand Trunk Western R Co v City of Fenton*, 439 Mich 240, 243-244; 482 NW2d 706 (1992). Conflict preemption occurs when "there is a 'positive conflict' between [a federal statute and a state law] such that they 'cannot consistently stand together.' " *Ter Beek*,

---

[2] The SSA is administered by the Social Security Administration, 42 USC 901(a), and the Administration is led by the Social Security Commissioner. 42 USC 902(a).

495 Mich at 11. Field preemption exists when Congress intends to foreclose any state regulation in the area, regardless of whether the state regulation is consistent with federal standards. *Foster*, 505 Mich at 166. See also *Grand Trunk Western R Co*, 439 Mich at 243-244 (Preemption may be express where Congress has explicitly stated its intent to preempt state law; "field," where state law regulates conduct in a field that Congress has intended to occupy exclusively; or "conflict," where state law is in actual conflict with federal law).[3]

There is a presumption against preemption when Congress has legislated on matters over which states traditionally govern. *Ter Beek*, 495 Mich at 10. See also *Biondo v Biondo*, 291 Mich App 720, 724; 809 NW2d 397 (2011) ("Generally, federal law does not preempt laws governing divorce or domestic relations, a legal arena belonging to the states rather than the United States.") and *English v Gen Electric Co*, 496 US 72, 79; 110 S Ct 2270; 110 L Ed 2d 65 (1990) (stating where "the field which Congress is said to have pre-empted includes areas that have been traditionally occupied by the States, congressional intent to supersede state laws must be clear and manifest" (internal quotations and citations omitted)). Because "probate matters traditionally have been nearly the exclusive concern of the states, there is a presumption against preemption of state law." *Witco Corp v Beekhuis*, 38 F3d 682, 687 (CA 3, 1994).

It is also true, both as a common-sense matter and as a principle of federalism, that state courts generally possess concurrent sovereignty with federal courts in deciding cases under federal law. *Burt v Titlow*, 571 US 12, 19; 134 S Ct 10; 187 L Ed 2d 348 (2013). The Supreme Court has "consistently held that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States." *Tafflin v Levitt*, 493 US 455, 458; 110 S Ct 792; 107 L Ed 2d 887 (1990). See also *Stone v Powell*, 428 US 465, 493, n35; 96 S Ct 3037; 49 L Ed 2d 1067 (1976) ("In sum, there is 'no intrinsic reason why the fact that a man is a federal judge should make him more competent, or conscientious, or learned with respect to the (consideration of Fourth Amendment claims) than his neighbor in the state courthouse.' "); *Huffman v Pursue, Ltd*, 420 US 592, 611; 95 S Ct 1200; 43 L Ed 2d 482 (1975) (rejecting the argument that "state judges will not be faithful to their constitutional responsibilities"); *Worldwide Church of God v McNair*, 805 F2d 888, 891 (CA 9, 1986) ("[S]tate courts are as competent as federal courts to decide federal constitutional issues."). Consequently, a "litigant may still enforce rights pursuant to the Federal law in state courts unless the Constitution or Congress has, expressly

---

[3] As Justice VIVIANO has noted, "[i]t is difficult to determine when a field has been impliedly preempted by a statute. At bottom, field preemption is really a species of conflict preemption, in that it is triggered when a legal provision trenches upon (i.e., conflicts with) a statute's occupation of a field. That a conflict lies at the heart of field preemption is important to keep in mind because it is very easy for the field-preemption analysis to exalt extratextual purpose above statutory text. The reason is that field preemption essentially implies additional statutory clauses beyond the statute's text, clauses that mandate preemption. In addition, choosing the correct field definition is difficult and critical because defining the field at a certain level of generality becomes the entire game." *Bronner v City of Detroit*, 507 Mich 158, 179; 968 NW2d 310 (2021)(VIVIANO, J., *concurring*) (quotation marks, brackets, and citations omitted).

or impliedly, given a Federal court exclusive jurisdiction over the subject matter." *Marshall v Consumers Power Co*, 65 Mich App 237, 244; 237 NW2d 266 (1976).[4]

Because there is no explicit statement by Congress expressing federal preemption on issues involving a representative payee's handling of social security benefits, we must determine whether implied preemption exists. Bomba does not specify if her argument is based upon field or conflict preemption, and the case she leads with, *Philpott v Essex Co Welfare Bd*, 409 US 413; 93 S Ct 590; 34 L Ed 2d 608 (1973), does not speak to any form of federal preemption. Instead, the *Philpott* Court held that the mandates of 42 USC 407 applied to the state's attempt to obtain social security benefits as reimbursement for housing costs, notwithstanding any state law. *Id*. Thus, it appears the court was applying conflict preemption, even though it did not expressly say so. We conclude that this matter is resolved through a straight-forward application of conflict preemption.

The most relevant provision of the Social Security Act at issue is 42 USC 407(a), which provides:

> The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law. [42 USC 407(a).]

Several years back, this Court examined 42 USC 407(a) and concluded that SSI benefits are protected from legal processes–even once deposited into the recipient's account–until converted into another source, and a state court order conflicting with the statute is preempted:

> The protection afforded to money received as Social Security benefits extends before and after the benefits are received. *Philpott v Essex Co Welfare Bd*, 409 US 413, 415-417; 93 S Ct 590; 34 L Ed 2d 608 (1973). See also *State Treasurer v Abbott*, 468 Mich 143, 155; 660 NW2d 714 (2003); *Whitwood, Inc v South Blvd Prop Mgt Co*, 265 Mich App 651, 654; 701 NW2d 747 (2005). The fact that the payments have been made does not make them lose their character as Social Security benefits or make them subject to legal process. To the contrary, the protections of 42 USC 407(a) apply, by their terms, to "moneys paid or payable" (emphasis added); the fact that benefits have been paid and may be on deposit in a recipient's bank account does not shed them of that protection until they are in some way converted into some other kind of asset. *Philpott*, 409 US at 415–417. Thus, even after a recipient receives SSDI benefits and deposits them into a bank account,

---

[4] All of our published decisions have precedential effect under the rule of stare decisis. MCR 7.215(C)(2). However, published decisions issued after November 1, 1990 that are on point with a particular issue must be followed by this Court *without discretion* (though we can express our reasons why we would prefer not to, and seek a polling of the Court to hold a conflict panel, see MCR 7.215(J)(1)), whereas older published opinions *should* be followed by this Court unless "important prudential considerations" compel us to do otherwise. *2000 Baum Family Trust v Babel*, 488 Mich 136, 180 n 26; 793 NW2d 633 (2010).

the SSDI benefits are still protected by 42 USC 407(a). *Whitwood*, 265 Mich App at 654. When a state court order attaches to Social Security benefits in contravention of 42 USC 407(a), the attachment amounts to a conflict with federal law, and such a conflict is one "that the State cannot win." *Bennett v Arkansas*, 485 US 395, 397; 108 S Ct 1204; 99 L Ed 2d 455 (1988). [*In re Lampert*, 306 Mich App 226, 234-235; 856 NW2d 192 (2014)].

Accord: *Biondo*, 291 Mich App at 727-728.

In certain circumstances, the Social Security Act also allows for benefits to be paid to a recipient's representative payee:

> Upon a determination by the Commissioner of Social Security that the interest of such individual would be served thereby, such payments shall be made, regardless of the legal competency or incompetency of the individual or eligible spouse, to another individual, or an organization, with respect to whom the requirements of subparagraph (B) have been met (in this paragraph referred to as such individual's "representative payee") for the use and benefit of the individual or eligible spouse. [42 USC 1383(a)(2)(A)(*ii*)(I).]

The Commissioner has the authority to define the term "use and benefit," 42 USC 1383(a)(2)(A)(*iv*), and to determine if a representative payee has misused benefits. 42 USC 1383(a)(1)(A)(*iii*). A misuse of benefits by the representative payee "occurs in any case in which the representative payee receives payment under this subchapter for the use and benefit of another person and converts such payment, or any part thereof, to a use other than for the use and benefit of such other person." 42 USC 1383(a)(2)(A)(*iv*).

Importantly, the SSA also addresses how a representative payee can use the recipient's benefits. For example, "[b]enefits of an individual may not be paid to any other person pursuant to subparagraph (A)(ii) if . . . such person's benefits under this subchapter, subchapter II, or subchapter VIII are certified for payment to a representative payee during the period for which the individual's benefits would be certified for payment to another person." 42 USC 1383(a)(2)(B)(*iii*)(VII). Benefits may not be paid to "a creditor of such individual who provides such individual with goods or services for consideration." 42 USC 1383(a)(2)(B)(*iii*)(III). However, this provision does not apply if the creditor is a relative residing in the same household as the individual, 42 USC 1383(a)(2)(B)(*v*)(I), or a legal guardian or legal representative of the individual, 42 USC 1383(a)(2)(B)(*v*)(II).

That the SSA contains great detail in both describing what a representative payee can and cannot do with the recipient's benefits, and in the oversight placed upon representative payees, was recognized by the Supreme Court in *Washington State Dep't of Social and Health Services v Keffeler*, 537 US 371, 376-377; 123 S Ct 1017; 154 L Ed 2d 972 (2003):

> Detailed regulations govern a representative payee's use of benefits. Generally, a payee must expend funds "only for the use and benefit of the beneficiary," in a way the payee determines "to be in the [beneficiary's] best interests." 20 CFR § § 404.2035(a), 416.635(a). The regulations get more specific

in providing that payments made for "current maintenance" are deemed to be "for the use and benefit of the beneficiary," defining "current maintenance" to include "cost[s] incurred in obtaining food, shelter, clothing, medical care, and personal comfort items." § § 404.2040(a), 416.640(a). Although a representative payee "may not be required to use benefit payments to satisfy a debt of the beneficiary" that arose before the period the benefit payments are certified to cover, a payee may discharge such a debt "if the current and reasonably foreseeable needs of the beneficiary are met" and it is in the beneficiary's interest to do so. § § 404.2040(d), 416.640(d). Finally, if there are any funds left over after a representative payee has used benefits for current maintenance and other authorized purposes, the payee is required to conserve or invest the funds and to hold them in trust for the beneficiary. § § 404.2045, 416.645.

The SSA also contains a thorough administrative process through which a representative payee's appointment can be challenged. The act specifically provides that "[a]ny individual who is dissatisfied with a determination by the Commissioner of Social Security to pay such individual's benefits to a representative payee . . . shall be entitled to a hearing by the Commissioner of Social Security, and to judicial review of the Commissioner's final decision . . ." 42 USC 1383(a)(2)(B)(*xi*). The judicial review is to be filed exclusively in federal court. 42 USC 405(g).

The probate court entered its order in an attempt to equally distribute the SSI benefits between the parties, as they are both coguardians of AM and both have physical custody of her on an equal basis. Presumably, as Basakis argues, the probate court entered the order in this guardianship proceeding under MCL 700.1302. Hence, the probate court had subject matter jurisdiction to enter the order, as a guardianship proceeding comes within the probate court's limited jurisdiction. See MCL 700.1302(c) and *Biondo*, 291 Mich App at 727. Instead, the question is whether this part of the order conflicts with the mandates of the SSA and, if so, which prevails. We hold that the order requiring that Bomba direct one-half of AM's monthly SSI benefits to Basakis conflicts with at least 42 USC 1383(a)(2)(A)(*ii*)(I), and potentially 42 USC 407(a).

The probate court order conflicts with the federal requirement that the *representative payee* determines (consistent with federal guidelines) how to best allocate the SSI benefits for the "use and benefit of" AM. 42 USC 1383(a)(2)(A)(*ii*)(I). This statute is clear in that only the representative payee can decide what to do with the SSI benefits awarded to the recipient, and other statutes are clear in what limits there are in allocating the benefits. The probate court's order directing how Bomba—the representative payee—is to allocate AM's benefits conflicts with these laws and, under the Supremacy Clause, the federal law controls over a conflicting state court order.[5]

---

[5] Though our conclusion that the probate court's order violates 42 USC 1383(a)(2)(A)(*ii*)(I) is sufficient to resolve this portion of Bomba's appeal, we are unconvinced that this portion of the order conflicts with 42 USC 407(a). Although, as confirmed by the *In re Lampart* Court, 306

Although Bazakis has not cited any relevant[6] authority in support of the probate court order, the majority of foreign state jurisdictions addressing this issue have held that a state court order requiring a representative payee to make a specific payment on behalf of the recipient conflicts with, and thus is preempted by, these same provisions of the SSA. These decisions are persuasive. *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 221 n 6; 761 NW2d 293 (2008).

In holding that state courts cannot order a representative payee to direct benefits in a certain manner, our sister states have used both conflict preemption and field preemption. See, e.g., *Boulter v Boulter*, 113 Nev 74, 79; 930 P2d 112 (1997) (explaining that, pursuant to 42 USC 407(a), even if the social security benefit is deposited into the recipient's bank account, the district court "is not empowered to compel [the recipient] to pay those benefits to [another]"); *In re Guardianship of Smith*, 17 A3d 136, 140; 2011 ME 51 (2011) (holding that an order requiring the representative payee to deposit a portion of the child's social security benefit into a bank account subject to the joint control of another was preempted because it conflicted with federal statutes and regulations); *Silver v Pinskey*, 981 A2d 284, 299; 2009 PA Super 183 (2009) (concluding that the order requiring the father to split a social security derivative benefit with the mother effectively dispensed with the federal statutes as a whole); *Brevard v Brevard*, 74 NC App 484, 488; 328 SE2d 789 (1985) (explaining that 42 USC 407(a) applies to funds that have been disbursed in concluding that the court did not have the power to order a father, the representative payee, to pay the benefits he received on behalf of the children to the court or to the mother);[7] *In re Ryan W*, 434 Md 577, 596; 76 A3d 1049 (2013) (holding that federal law divested state courts of subject-matter jurisdiction and that a representative payee's allocations of benefits was not subject to state

---

Mich App at 236, 42 USC 407(a) contains a broad mandate on the inability to obtain a recipient's benefits through writs, attachment, or other similar legal process, that provision only applies when one is seeking to "discharge or secure discharge of an allegedly existing or anticipated liability." *Keffeler*, 537 US at 385. Here, it is less than clear whether the ordered payments to Bazakis were in part for a prior debt, thus making Bazakis a creditor and making 42 USC 407(a) applicable. And, even if it was in part for an existing debt, there is an exception for payments to both a relative residing in the same household as the individual, 42 USC 1383(a)(2)(B)(*v*)(I), and a legal guardian of the individual, 42 USC 1383(a)(2)(B)(*v*)(II).

[6] The only decision cited on this issue is *In re Vansach Estate*, but there is nothing in that opinion even referencing representative payees. Instead, that Court addressed the transferring of assets for purposes of Medicaid eligibility. See *In re Vansach Estate*, 324 Mich App at 390. The majority of Bomba's remaining authority concerns a court's authority to appoint a representative payee, not whether a state court can order the representative payee to make certain payments.

[7] However, the North Carolina Court of Appeals later held that state courts are not preempted from ordering the specific use of SSI benefits by a representative payee on the ward's behalf. *In re JG*, 186 NC App 496, 504-505; 652 SE2d 266 (2007). A year later, another panel of that court held that *Brevard* was the controlling law until the North Carolina Supreme Court ruled differently. *O'Connor v Zelinske*, 193 NC App 683, 694; 668 SE2d 615 (2008).

review); and *Peace v Peace*, 234 Ariz 546, 548; 323 P3d 1197 (App, 2014) (employing field preemption and holding that an order designating where benefits were to be sent was preempted).[8]

As her final argument regarding the SSI benefits, Bomba argues that the probate court could not have ordered her to place AM's SSI benefits into a joint account with both coguardians on the account, along with AM.[9] Initially, we point out that our reading of the order is not necessarily the same as Bomba's. We read paragraph two of the order to require Bomba to set up a new account with only AM being named on the account, but both Bomba and Bazakis have passwords to access account information. In any event, even if Bomba's reading of the order is correct, there is no authority holding that an individual receiving benefits cannot hold a joint account. On the contrary, when accounting for a disabled individual's funds, the Code of Federal Regulations provides as follows for determining the resources of a person receiving SSI:

> (c) Jointly-held account—
>
> (1) Account holders include one or more SSI claimants or recipients. If there is only one SSI claimant or recipient account holder on a jointly held account, we presume that all of the funds in the account belong to that individual. If there is more than one claimant or recipient account holder, we presume that all the funds in the account belong to those individuals in equal shares. [20 CFR 416.1208.]

Because the federal regulations expressly contemplate that an account may be held jointly with an SSI recipient, or that multiple SSI recipients might share a joint account, it stands to reason that an SSI recipient can in fact hold an account jointly with a nonrecipient. The probate court did not err when it ordered that all of the accounts in AM's name would be held jointly between her coguardians.[10]

## C. BIRTHDAY VISITATION

---

[8] Although the probate court could not order Bomba to split the benefits with Bazakis, nothing seems to preclude the court from considering Bomba's use of those benefits for AM while she is residing with her, for purposes of child support or other relevant matter. See, e.g., *In re Marriage of Stephenson and Papineau*, 302 Kan 851, 875-876; 358 P3d 86 (2015) and *LaMothe v LeBlanc*, 193 Vt 399, 414; 2013 VT 21; 70 A3d 977 (2013).

[9] Bomba has not waived this issue. A waiver is an intentional relinquishment or abandonment of a known right. *Quality Prod & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 374; 666 NW2d 251 (2003). In the trial court, Bomba repeatedly and vociferously opposed adding Bazakis to the account that she had as AM's representative payee. Although Bomba proposed to create an account at a neutral bank so that providing Bazakis with the password would not allow Bazakis to access her other bank accounts, that offer was not an intentional relinquishment of the argument that the court could not order her to create a joint account for AM.

[10] Bomba is correct that the probate court did not have jurisdiction to enter an order regarding who should be AM's representative payee. However, because the order did not purport to change AM's representative payee, but simply confirmed what the SSA did, there was no remedy for this error.

Next on our plate is Bomba's argument that the probate court erred by failing to consider AM's preferences when deciding with whom she would spend her birthday and Easter. According to Bomba, AM should be able to celebrate Easter holy days with both parents on their respective holy days and spend time with each parent on her birthday.

This Court reviews for an abuse of discretion the probate court's dispositional rulings concerning guardianship. *In re Bibi Guardianship*, 315 Mich App 323, 328; 890 NW2d 387 (2016). The court abuses its discretion when its decision falls outside the range of reasonable outcomes. *Id*. at 329.

MCL 330.1628(1) provides that the court may appoint a guardian for a person with a developmental disability. Before doing so, "the court shall make a reasonable effort to question the individual concerning his or her preference regarding the person to be appointed guardian, and any preference indicated shall be given due consideration." MCL 330.1628(2). MCL 330.1637(1) provides that the individual's guardian may petition the court for "a discharge or modification order . . ." The court's order may, among other things, "[m]ake any other order that the court considers appropriate and in the interests of the individual with a developmental disability." MCL 330.1637(4)(e). The court must "set[] forth the factual basis for its findings . . ." MCL 330.1637(4).

As far as we can discern, no provision of the Mental Health Code provides that the probate court must take the developmentally disabled person's preference into account other than when deciding the person to be appointed as the disabled person's guardian. Bomba fails to provide any legal basis to extend this statute to circumstances under which the court resolves a dispute between coguardians. *Caldwell v Chapman*, 240 Mich App 124, 132-133; 610 NW2d 264 (2000).[11]

## D. SANCTIONS

As her final argument, Bomba challenges the trial court's failure to decide the motion for sanctions that she filed against Bazakis. However, as Bazakis argues, Bomba waived any argument regarding sanctions.

A waiver is an intentional relinquishment or abandonment of a known right. *Quality Prod & Concepts Co*, 469 Mich at 374. An affirmative expression of assent constitutes a waiver. *Id*. at 378. In contrast, a failure to timely assert a right constitutes forfeiture. *Id*. at 379. "Generally, a party may not remain silent in the trial court, only to prevail on an issue that was not called to the trial court's attention." *Walters v Nadell*, 481 Mich 377, 388; 751 NW2d 431 (2008).

Towards the end of the relevant motion hearing, the following exchange took place following the parties' arguments regarding AM's birthday and Easter:

---

[11] Bomba relies on *In re Neal*, 230 Mich App 723, 729 n 5; 584 NW2d 654 (1998), for the proposition that the court needs to consider the developmentally disabled person's preference. However, *Neal* only discusses the disabled person's preference for who will be appointed guardian, but that issue is not being argued by Bomba, and the order did not appoint AM's guardian.

> THE COURT. Anything else?
>
> MR. PICARD [counsel for Bazakis]. Not from us.
>
> MR. WARNER [counsel for Bomba]. No, Your Honor.

Because during the hearing at which the parties' motions were being addressed, Bomba expressly stated that she had nothing else, even though the trial court had not addressed her motion for sanctions, Bomba has waived this argument. Bomba cannot challenge on appeal the probate court's failure to decide her motion when she failed to raise her motion for sanctions to the probate court's attention.[12]

In any event, there was no abuse of discretion. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). Bomba based her arguments for sanctions on the allegedly frivolous and vexations nature of Bazakis's pleadings. However, it is not likely that, had the probate court addressed Bomba's motion for sanctions, the result of the proceedings would have been different because it is not reasonably probable that the court would have sanctioned Bazakis after siding with him on each issue. And, even though some of Bomba's arguments have succeeded on appeal, nothing from the probate court record reveals that the pleadings challenged were frivolous or otherwise sanctionable.

The probate court's order is reversed to the extent it directs Bomba how to allocate AM's benefits, and in all other respects, we affirm. This matter is remanded for further proceedings. We do not retain jurisdiction. Nor do we award costs, neither party having prevailed in full. MCR 7.219(A).

/s/ Christopher M. Murray
/s/ Amy Ronayne Krause
/s/ Colleen A. O'Brien

---

[12] Had Bomba not affirmatively advised the trial court that she had nothing else, the trial court's failure to address her motion could not be held against her. See *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994).

-11-