*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ELIZABETH OGHENEREKE-OMAVUEZI EKE,

        Plaintiff/Counterdefendant-Appellant,

v

BOBBY FESTUS,

        Defendant/Counterplaintiff-Appellee.

UNPUBLISHED
December 16, 2025
3:00 PM

Nos. 371394 and 372981
Wayne Circuit Court
LC No. 22-108109-DM

Before: TREBILCOCK, P.J., and PATEL and WALLACE, JJ.

PER CURIAM.

These consolidated appeals arise out of a consent judgment of divorce. Plaintiff wife raises several allegations of error by the trial court from its entry of a show-cause order requiring her to pay defendant husband attorney fees, a certain share of equity in the marital home, and sales tax on the transfer of a vehicle's title. We vacate in part and remand for further proceedings.

## I. BACKGROUND

Plaintiff/counterdefendant, Elizabeth Oghenereke-Omavuezi Eke (wife), and defendant/counterplaintiff, Bobby Festus (husband), divorced through a consent judgment and divided the marital estate. The assets at issue concern their business, home, and a vehicle.

Concerning the parties' company, Omega Staffing Solutions, Inc., the consent judgment of divorce required wife to pay husband $450,000 for his interest in Omega Staffing in four installment payments between February 10, 2023 and December 31, 2023.[1] The terms, however, also provided wife with an early-payment "discount" of $50,000 if she paid $400,000 by May 31, 2023.

---

[1] Wife was permitted to make certain deductions from the first payment in relation to expenses concerning the divorce proceedings.

The parties also agreed to share in the equity of the to-be-sold marital home, which wife was required to "immediately place . . . for sale at fair market value." Additionally, they agreed to "equally split the proceeds from the sale of the house after all expenses [were] paid . . . ," and that husband would "be awarded an additional" $12,000 "from the sale of marital home for [husband] to pay towards his attorney fees" if husband's counsel provided documentation evidencing that amount owing. Finally, wife agreed to transfer the title to a Mercedes to husband after she paid off the vehicle's loan.

In addition to the division of property, the parties acknowledged husband had significant outstanding tax obligations with the Internal Revenue Service (IRS). They agreed husband was "solely responsible" for his tax debt and would hold wife harmless in relation to his tax obligations. These tax obligations serve as the impetus for the disputes on appeal.

After wife made the first business-interest installment payment of $120,000 to husband, but before the sale of the marital home, the IRS served wife with a notice of levy. It indicated husband owed the IRS $384,340.16, with interest and penalties, and instructed that she "[t]urn over any . . . money, property, credits, etc. that you have or are already obligated to pay the taxpayer, when you would have paid it if this person asked for payment." Three days after receipt of the notice, the marital home sold, and wife received $56,662.26 in proceeds.

Having received the IRS notice, wife did not make the remaining payments to husband required under the consent judgment of divorce and instead moved the trial court to modify it to allow her to comply with the levy, without violating the judgment. Before the trial court held oral argument on wife's motion, the IRS provided a final notice of tax levy to wife, which threatened to hold her personally liable for $395,842.35. Wilting to this threat, wife paid $320,331.13 to the IRS.

Husband then moved the trial court to order wife to show cause as to why she should not be held in criminal contempt for failing to comply with the consent judgment of divorce, asserting that the payment to the IRS was improper and that he only received the first installment payment for his share of Omega Staffing. He further argued that, while he had received the title to the Mercedes, he was required to pay $2,758.23 in taxes because wife improperly stated she sold husband the Mercedes. Wife opposed the motion, arguing she complied with the levy and was entitled to protections under the Internal Revenue Code, 26 USC 1 *et seq*. According to wife, the Supremacy Clause of the United States Constitution, US Const, art VI, cl 2, prohibited the trial court from enforcing the consent judgment of divorce in a manner that violated federal law. Concerning the Mercedes, wife claimed she completed the title transfer form accurately, husband failed to request a tax exemption, and the consent judgment of divorce was silent as to the issue.

The trial court ultimately granted husband's show-cause motion in part, ordering wife to pay husband $2,758.23 for the sales tax on the transfer of the Mercedes, $28,331.13 for his share of the equity in the marital home, and to directly pay husband's counsel $12,000. And without explanation, the trial court expressly found the latter two amounts (totaling $40,331.13) were "not subject to the Tax Levy." Finally, the trial court denied wife's motion to modify the consent judgment of divorce as unnecessary; in so holding, the trial court quoted the hold-harmless provision in the consent judgment of divorce, and it held wife would "receive credit for all

payments made" to the IRS. After the trial court denied wife's motion for reconsideration, these consolidated appeals commenced.

## II. ATTORNEY FEE PAYMENT

We first consider the trial court's direction that wife pay husband's counsel $12,000 under the terms of the consent judgment. On de novo review of the trial court's interpretation of the consent judgment, see *Andrusz v Andrusz*, 320 Mich App 445, 452; 904 NW2d 636 (2017), the trial court improperly read words into the plain language of the consent judgment of divorce.[2]

Start with where there is no dispute between the parties. Wife timely made the first business-interest installment payment of $120,000 and sold the marital home. Husband's share from the sale was $28,331.13, and husband allegedly had an outstanding balance of $12,000 in attorney fees at the time. Wife did not turn over those funds to husband, did not pay his attorney, and did not make any additional installment payments to husband for his interest in Omega Staffing. Rather, in response to the final notice, wife paid the IRS a total of $320,331.13. The trial court ultimately concluded, as refenced above, that $40,331.13 was "not subject to the Tax Levy" and ordered wife to pay $28,331.13 to husband and $12,000 to his counsel.[3]

On appeal, wife contends that by ordering her to directly pay husband's counsel $12,000 in attorney fees and failing to fully account for her payments made to satisfy the tax levy, the trial court effectively rewrote a provision of the consent judgment. We agree.

"A consent judgment is in the nature of a contract, and is to be construed and applied as such." *Laffin v Laffin*, 280 Mich App 513, 517; 760 NW2d 738 (2008). "A contract must be interpreted according to its plain and ordinary meaning." *Holmes v Holmes*, 281 Mich App 575, 593; 760 NW2d 300 (2008). As such, "courts must construe unambiguous contract provisions as written." *Id*. at 594. "It is a well-settled principle of law that courts are bound by property settlements reached through negotiations and agreement by parties to a divorce action," unless certain exceptions that are not relevant to this appeal exist. *Vittiglio v Vittiglio*, 297 Mich App 391, 400; 824 NW2d 591 (2012) (quotation marks and citation omitted). "[T]o a certain extent and in certain contexts," trial courts may "modify judgments of divorce to reach equitable results." *Andrusz*, 320 Mich App at 452. However, this rule applies "in the context of a divorce judgment entered by the court after a contested action, *not* in the context of tampering with the parties' consent judgment." *Id*. at 452-453. "[W]hen parties have freely established their mutual rights

---

[2] We thus do not address wife's arguments concerning the trial court's alleged conflicting rulings and inconsistent application of the hold-harmless clause.

[3] Contrary to husband's arguments on appeal, there is no indication the trial court ordered wife to pay him an extra $50,000 in relation to Omega Staffing because the trial court concluded wife was not entitled to the $50,000 discount. The trial court never directly ruled on whether wife was entitled to "preserve" the "discount," and we "need not address an issue that was not the basis of the trial court's decision." See *Aguirre v Dep't of Corrections*, 307 Mich App 315, 326; 859 NW2d 267 (2014). The issue concerning the $50,000 "discount" can be addressed on remand, if necessary.

and obligations through the formation of unambiguous contracts, the law requires this Court to enforce the terms and conditions contained in such contracts, if the contract is not contrary to public policy." *Rose v Rose*, 289 Mich App 45, 58-59; 795 NW2d 611 (2010) (quotation marks and citation omitted; alteration in original).

Measured against these standards, the trial court erred. As already stated, the parties agreed husband would receive an additional $12,000 "from the sale of marital home for [husband] to pay towards his attorney fees," if "upon entry of th[e] Judgment of Divorce, counsel for [husband] . . . provide[d] counsel for [wife] her bill demonstrating the outstanding balance of $12,000[]." This language—which the parties undisputedly negotiated while each was represented by counsel—clearly and unambiguously entitled husband to an additional $12,000 from the sale of the marital home, for *husband* to use towards payment of his attorney fees, if his counsel presented proof husband owed at least $12,000 in attorney fees.

As set forth, the relevant language requires husband, not wife, to pay the $12,000 to husband's counsel for attorney fees. Yet husband's counsel requested the trial court order wife to pay counsel directly so additional issues would not arise—i.e., the IRS would not seek to seize the $12,000. While the parties clearly intended for the $12,000 to go to husband's counsel if there was an outstanding balance of that amount, "[r]espect for the freedom to contract entails that we enforce only those obligations actually assented to by the parties. A court cannot rewrite a contract if its terms are expressly stated." *Home-Owners Ins Co v Andriacchi*, 320 Mich App 52, 62-63; 903 NW2d 197 (2017) (quotation marks and citations omitted). Accordingly, the trial court erroneously rewrote the terms of the consent judgment by ordering wife, rather than husband, to directly pay the $12,000 in attorney fees to husband's counsel. In doing so, the trial court tampered with the parties' consent judgment and improperly created an obligation between wife and husband's counsel when neither a legal nor a contractual obligation previously existed. This exposed wife to potential additional liability to the IRS, to which she did not agree.

Finally, to the extent the trial court relied on equitable principles to modify the parties' consent judgment, this was improper because there were no allegations of "fraud, mistake, illegality, or unconscionability," *Andrusz*, 320 Mich App at 453, nor any void in the consent judgment regarding which party was required, if applicable, to pay the $12,000 toward husband's attorney fees, *id*. Accordingly, the trial court was bound by the parties' consent judgment, *Vittiglio*, 297 Mich App at 400, which could "only be modified with the consent of the parties . . . ," *Andrusz*, 320 Mich App at 453.

For these reasons, we vacate the portion of the trial court's order requiring wife to directly pay husband's counsel $12,000, and instruct the trial court to issue an order requiring husband's counsel to return the $12,000 to wife. See MCR 7.216(A)(7).

## III. THE PREEMPTION CLAUSE

Next, wife argues the trial court "failed to explain why the Supremacy Clause does not control" when it required wife to pay $40,331.13. We agree that it did not do so, and we consider the issue on appeal because it is a question of law that we may offer guidance on remand, for which the necessary facts have been presented, see *Aguirre v Dep't of Corrections*, 307 Mich App 315,

326; 859 NW2d 267 (2014), and is a question we review de novo, *Biondo v Biondo*, 291 Mich App 720, 724; 809 NW2d 397 (2011).

"Federal preemption of state law is grounded in the Supremacy Clause of the United States Constitution, which invalidates state laws that interfere with, or are contrary to, federal law." *Ter Beek v City of Wyoming*, 495 Mich 1, 10; 846 NW2d 531 (2014) (quotation marks and citation omitted). "[F]ederal law conflicts with state law where it is impossible for a private party to comply with both state and federal requirements or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Henry v Laborers' Local 1191*, 495 Mich 260, 275 n 32; 848 NW2d 130 (2014) (quotation marks and citation omitted). "When a state law is preempted by federal law, the state law is without effect." *Ter Beek*, 495 Mich at 10 (quotation marks and citation omitted). "[T]he purpose of Congress is the ultimate touchstone in every pre-emption case." *Id*. (quotation marks and citations omitted).

The Supreme Court of the United States has held "that [t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *Rose v Rose*, 481 US 619, 625; 107 S Ct 2029; 95 L Ed 2d 599 (1987) (quotation marks and citations omitted; alteration in original). "On the rare occasion when state family law has come into conflict with a federal statute," a court must determine "whether Congress has positively required by direct enactment that state law be pre-empted." *Id*. (quotation marks and citations omitted). "Before a state law governing domestic relations will be overridden, it must do major damage to clear and substantial federal interests." *Id*. (quotation marks and citations omitted). See also *Biondo*, 291 Mich App at 724.

"[S]tate laws governing the economic aspects of domestic relations . . . must give way to clearly conflicting federal enactments." *Hillman v Maretta*, 569 US 483, 491; 133 S Ct 1943; 186 L Ed 2d 43 (2013). "When it comes to taxation, Congress has recognized that the flow of money into the coffers of the Treasury of the United States must be uninterrupted." *Farr v United States*, 990 F2d 451, 455 (CA 9, 1993).[4] Under the Internal Revenue Code, when a taxpayer is delinquent in paying taxes, 26 USC 6321 places the government in the position of a secured creditor and empowers it to impose a lien on "all property and rights to property, whether real or personal, belonging to" the taxpayer. *Phelps v United States*, 421 US 330, 334; 95 S Ct 1728; 44 L Ed 2d 201 (1975), citing 26 USC 6321 (quotation marks omitted).

The IRS can recover delinquent taxes by, among other things, attaching the taxpayer's property by an administrative levy. See *United States v Rodgers*, 461 US 677, 682; 103 S Ct 2132; 76 L Ed 2d 236 (1983). "Administrative levy, unlike an ordinary lawsuit . . . does not require any judicial intervention, and it is up to the taxpayer, if he so chooses, to go to court if he claims that the assessed amount was not legally owing." *Id*. at 682-683. The purpose of this "collection tool[] is to ensure the prompt and certain enforcement of the tax laws in a system relying primarily on self-reporting." *Id*. at 683. See also *United States v Nat'l Bank of Commerce*, 472 US 713, 721; 105 S Ct 2919; 86 L Ed 2d 565 (1985) ("The underlying principle justifying the administrative

---

[4] "While the decisions of federal circuit courts are not binding, they may be persuasive." *Glenn v TPI Petroleum, Inc*, 305 Mich App 698, 716 n 5; 854 NW2d 509 (2014).

levy is the need of the government promptly to secure its revenues.") (quotation marks and citation omitted).

"Of course, a person's property interest may often be in the hands of another. Were the IRS precluded from reaching those interests, its collection efforts would often be stymied. Not surprisingly, Congress has provided for that situation." *Farr*, 990 F2d at 456. "In the situation where a taxpayer's property is held by another, a notice of levy upon the custodian is customarily served pursuant to [26 USC] 6332(a)." *Nat'l Bank of Commerce*, 472 US at 720; see also *Phelps*, 421 US at 335. "This notice gives the IRS the right to all property levied upon, and creates a custodial relationship between the person holding the property and the IRS so that the property comes into the constructive possession of the Government." *Nat'l Bank of Commerce*, 472 US at 720 (quotation marks and citation omitted). "That another party or parties may have competing claims to the accounts is not a legitimate statutory defense." *Id*. at 727.

Substantial penalties await those who fail to comply with a levy. See *Congress Talcott Corp v Gruber*, 993 F2d 315, 318 (CA 3, 1993). See also 26 USC 6332(d)(1) and (2). And as noted by wife, a third party who honors a levy, and surrenders property to the IRS, is " 'discharged from any obligation or liability to the delinquent taxpayer with respect to such property or rights to property arising from such surrender or payment.' " *United States v Gen Motors Corp*, 929 F2d 249, 251 (CA 6, 1991), quoting 26 USC 6332(e). For these reasons, and assuming on remand wife provides sufficient evidence of payment of husband's tax debt to the IRS, wife is only obligated to pay any amount to husband under the consent judgment of divorce that remains owing after applying the amounts paid to the IRS.

Husband's argument that wife had a duty to recognize alleged deficiencies in the levy and oppose the IRS on his behalf does not alter this conclusion. Once the IRS served the notice of levy on wife, she had a legal obligation to turn over funds in her possession to the IRS under 26 USC 6332(a). Wife had "two, and only two, possible defenses for failure to comply with the demand: that [she was] not in possession of the property of [husband], or that the property [was] subject to a prior judicial attachment or execution." *Nat'l Bank of Commerce*, 472 US at 727. Neither exception apparently applies, and husband does not argue otherwise.

For these reasons, on remand, the trial court shall give wife full credit for amounts she can establish were paid directly to the IRS as required by the tax lien against any amounts due and owing under the terms of the consent judgment consistent with this opinion.

## IV. CONTEMPT PROCEEDINGS

We conclude with the trial court's contempt proceedings.

A trial court maintains "the inherent right to punish all contempts of court," *Johnson v White*, 261 Mich App 332, 345; 682 NW2d 505 (2004), and has certain statutory authority to punish as contempt a party's disobedience of a court order, MCL 600.1701(g); *Kirby v Mich High Sch Athletic Ass'n*, 459 Mich 23, 32 n 8; 585 NW2d 290 (1998). Such authority includes utilizing contempt powers to force compliance with a judgment of divorce even though the wronged party is able to pursue the traditional means of collecting a money judgment. See MCL 600.1701(e). This Court reviews "a trial court's issuance of a contempt order for an abuse of discretion," *Porter*

*v Porter*, 285 Mich App 450, 454; 776 NW2d 377 (2009), and questions of law de novo, *id*. at 454-455. "A trial court's findings in a contempt proceeding are reviewed for clear error and must be affirmed on appeal if there is competent evidence to support them." *In re Contempt of Henry*, 282 Mich App 656, 668; 765 NW2d 44 (2009).

Here, the trial court sought to coerce wife to comply with the terms of the consent judgment of divorce, rather than acting to punish wife for past misconduct that offended the court's dignity and undermined its authority. The distinctions between civil and criminal contempt make it clear that, regardless of the parties' labeling of the contempt proceedings as criminal, the trial court actually intended to hold wife in civil contempt—not criminal contempt. See *In re Contempt of Auto Club Ins Ass'n*, 243 Mich App 697, 711-713; 624 NW2d 443 (2000) *(In re Contempt of ACIA)* (distinguishing between civil and criminal contempt). See also *Porter*, 285 Mich App at 455-456 (same).

Because the contempt proceedings were civil, "the [trial] court had to find [wife] was neglectful or violated [her] duty to obey an order of the court." See *In re Contempt of United Stationers Supply Co*, 239 Mich App 496, 501; 608 NW2d 105 (2000). See also *Cassidy v Cassidy*, 318 Mich App 463, 505; 899 NW2d 65 (2017). "When exercising its civil contempt power, the court acts as the factfinder, determines whether there was contempt under a preponderance of the evidence standard, and imposes sanctions if this standard is met." *In re Contempt of ACIA*, 243 Mich App at 712. "If the contemptuous conduct occurs outside the court's direct view, i.e., it is indirect contempt, the court must hold a hearing to determine whether the alleged contemnor actually committed contempt," *id*. at 712-713 (quotation marks and citation omitted), and it may punish the contemnor "after proof of the facts charged has been made by affidavit or other method and opportunity has been given to defend," MCL 600.1711(2). In a civil contempt proceeding, specifically, "the accused must be accorded rudimentary due process, i.e., notice and an opportunity to present a defense, and the party seeking enforcement of the court's order bears the burden of proving by a preponderance of the evidence that the order was violated." *Porter*, 285 Mich App at 456-457.

In this case, husband did not meet his burden of establishing, by a preponderance of the evidence, that wife violated the consent judgment of divorce by failing to pay him $40,331.13 after the sale of the marital home. When the trial court held the show-cause hearing, the parties disputed whether wife kept the contested funds or paid them to the IRS under the levy. Despite this clear factual issue needing resolution, the trial court did not receive or admit any documentary evidence or hear sworn testimony. Instead, it found that wife violated the consent judgment of divorce on the basis of arguments by husband's counsel that wife kept 100% of the proceeds from the sale of the marital home. However, the arguments of counsel are not evidence. See *Zantop Int'l Airlines, Inc v Eastern Airlines*, 200 Mich App 344, 364; 503 NW2d 915 (1993). Similarly, husband did not support his underlying show-cause motion with an affidavit. While his motion was verified, "the requirements regarding the form of verification for a pleading and the form of an affidavit are significantly different." *Miller v Rondeau*, 174 Mich App 483, 487; 436 NW2d 393 (1988). Accordingly, his motion did not have the evidentiary force of an affidavit. Without evidence to

support its conclusion, and without resolution of the factual dispute, it was clear legal error for the trial court to conclude wife violated the consent judgment of divorce by failing to pay $40,331.13.[5]

So too for the trial court's order that wife reimburse husband for the $2,758.23 sales tax stemming from the sale of the Mercedes. It is undisputed wife complied with the consent judgment of divorce when she transferred the title of the Mercedes to husband after she paid off the vehicle's debt. The consent judgment of divorce was silent as to which party would be responsible for taxes relating to the transfer, and it did not dictate how the transfer of the title had to be accomplished. Because wife fully complied with plain language of the consent judgment of divorce concerning the Mercedes, contempt proceedings concerning the Mercedes were improper. See, e.g., *Kirby*, 459 Mich at 32 n 8 ("A court may punish as contempt a party's *disobedience* of a court order.") (emphasis added). We therefore vacate the portion of the trial court's order requiring wife to pay husband $2,758.23.

## V. CONCLUSION

In sum, we vacate the trial court's May 22, 2024 order, in part, and remand for further proceedings consistent with this opinion. If necessary, on remand, the parties should be granted: (1) the opportunity to be heard; and (2) an evidentiary hearing. Once it determines the amounts paid to the IRS, the trial court must grant wife immunity under 26 USC 6332(e) for those amounts. Any amounts wife improperly paid to husband or his counsel under the May 22, 2024 order must be returned to her. See MCR 7.216(A)(7). We do not retain jurisdiction.[6]

/s/ Christopher M. Trebilcock
/s/ Sima G. Patel
/s/ Randy J. Wallace

---

[5] Given this holding, we need not consider wife's argument that husband failed to present evidence to support he was entitled to damages under MCL 600.1721.

[6] We need not consider husband's arguments as to whether the trial court properly denied wife's motion to modify the consent judgment of divorce because wife did not appeal that decision.